THE CLEVELAND PAPER COMPANY (A CORPORATION) V.
THE COURIER COMPANY (A CORPORATION)
AND CHARLES H. MITCHAMORE.

*Corporations—Contract of partnership—Liability.*

1. A corporation may, in furtherance of the object of its creation, contract with an individual, though the effect of the contract may be to impose upon it the liability of a partner.

2. As to third persons, the liability of a partner is frequently imposed, though it was not the intention of the party sought to be charged to become one, and even though a partnership could not have been made.

3. In a suit against a corporation and private person, the testimony tended to show that the defendants assumed to form a partnership, to whom the plaintiff sold goods, relying upon the liability of *both* vendees, who had the benefit of the goods, or the proceeds thereof, they being such as both defendants were using in their business, and who once gave their note therefor.

   *Held,* sufficient, if established, to render defendants liable, under the authority of *Day v. Buggy Co.,* 57 Mich. 146.

Error to Saginaw. (Gage, J.) Argued April 19, 1887. Decided October 13, 1887.

Assumpsit. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*Durand & Brewer,* for appellant.

*Tarsney & Weadock,* for defendant Courier Company.

SHERWOOD, J. The plaintiff in this case is a foreign corporation, doing business in this State.

The defendant company is duly organized under the laws of this State—

" For the purpose of publishing periodicals, newspapers, books, tracts, documents, and other publications of a historical, religious, literary, agricultural, scientific, or educational character, and for general printing and publishing business,"—

And was a copartner with the other defendant, as claimed by the plaintiff, and, as such, liable to the plaintiff for the claims mentioned in the declaration, which is upon the common counts in assumpsit.

The defendant company pleaded the general issue, and the cause was tried in the Saginaw circuit before a jury. At the close of the testimony, the circuit judge directed a verdict for the defendants, and the plaintiff brings error.

The copartnership company (defendants) did business under the name of the "Michigan Paper Company," and the suit is brought to recover the sum of $576, being a balance claimed to be due for merchandise sold by the plaintiff to said company. The items of the claim are set forth in the plaintiff's bill of particulars, upon which the balance is shown. The defendant company alone appears and defends. Mitchamore made no defense in either court.

The copartnership of the defendants was formed and created by the following contract:

" Memorandum of agreement made this first day of September, 1883, between the Courier Company, of East Saginaw, Michigan, and C. H. Mitchamore, of the same place.

" The conditions of this agreement are that the said Courier Company shall contribute the sum of eight thousand dollars ($8,000) in cash or merchandise, or both, and the said C. A. Mitchamore shall contribute the sum of six hundred dollars ($600) in cash, for the purpose of forming a copartnership between the said parties, and carrying on a general paper business, under the firm name of ' Michigan Paper Company,' said firm doing business in East Saginaw; the said C. H. Mitchamore to assume and retain the management of said business; and. as a compensation for his services, the said Michigan Paper Company shall pay said Mitchamore the sum of nine hundred dollars ($900) per annum.

" An inventory of all goods and chattels shall be taken semi-annually; and the net profits, after paying all expenses, including interest at the rate of seven (7) per cent. on the capital invested,—interest payable to each copartner according to his or their right therein,—shall be divided equally between the said copartners; and the said net profits are not withdrawn from, but remain with, said Michigan Paper Company. It shall become a part of said capital, and draw interest as hereinbefore stated.

" This agreement shall be binding to the said Courier Company and C. H. Mitchamore for the term of one year from the date hereof, and, if mutually agreed at the expiration of the one year, then this agreement shall be binding upon said parties for the term of five years from the date hereof.

" COURIER COMPANY,<br>
" W. H. EDWARDS, Manager.<br>
" C. H. MITCHAMORE."

The testimony tends to show that, for many years previous to the formation of the Michigan Paper Company, the Courier Company had been carrying on, in connection with its printing business, the business carried on by the paper company; that the Michigan Paper Company carried on its business in the same room after it was organized; and that Mitchamore was taken in to conduct and supervise that branch of the business. It further appears from the record that at the time the contract of September 1, 1883, was made the Courier Company's stock numbered 1,000 shares, and that W. H. Edwards was at that time the manager, president, and treasurer of said company; that W. H. Edwards held 14 shares of the stock, and his wife held 840 shares, and the remaining 146 shares were held by 9 other individuals.

The record further shows that in pursuance of the agreement of September 1, 1883, the Courier Company contributed to the Michigan Paper Company all of its stock of goods on hand, and received a credit therefor on the Courier Company's books for the sum of $7,849.15, and that Mitchamore contributed $600, and was to receive a salary of $900 per annum; and further shows that each was to receive interest

at 7 per cent. on the capital invested, which, with the expenses, the business was to pay; but net profits were not to be withdrawn, but remain with the paper company.

Under the contract of September 1, 1883, and the circumstances above stated, as the proofs show, the Michigan Paper Company commenced doing business, and continued it until the first day of September, 1884, when the company was dissolved, and another arrangement was made between the said Mitchamore and the said Courier Company, by said W. H. Edwards, as manager thereof. This new arrangement was reduced to writing, as follows:

"This agreement, made and entered into this first day of September, A. D. 1884, by and between the Courier Company, of East Saginaw, Michigan, of the one part, and C. H. Mitchamore, of the same place, of the other part, *Witnesseth*:

"That whereas, on the first day of September, 1883, the said parties hereunto entered into a partnership under the name and style of the 'Michigan Paper Company,' upon the terms and conditions stated in the articles of copartnership between the said parties, of date the said first day of September, A. D. 1883.

"And whereas, the said Mitchamore is desirous of purchasing the interest of said Courier Company in said Michigan Paper Company; and it is agreed between the parties hereto that the value of said interest of said Courier Company in said copartnership is the sum of $6,783.

"Now, it is agreed that said copartnership between said Courier Company and said Mitchamore shall continue under the name and style of the 'Michigan Paper Company,' upon the following terms and conditions:

"*First.* The said Courier Company agrees to sell, and the said Mitchamore agrees to purchase, the interest of the said Courier Company in said copartnership, for the sum of $6,783, which shall be paid by the said Mitchamore to the said Courier Company as follows: $500 upon the execution of this article; $500 on or before October 1, 1884; $1,000 on or before November 1, 1884. And the balance of said purchase price shall be paid as follows: $200 on the tenth day of each month, commencing December 10, 1884, and continuing on the tenth day of each and every month thereafter, until the full amount of said purchase price is paid, with

interest upon all sums remaining unpaid, at the rate of 7 per cent. per annum, semi-annually; said interest payable on the tenth day of March and September, respectively.

"It is agreed that said Courier Company shall keep, hold, and retain its title and ownership of the property, stock, and effects of said Michigan Paper Company until the full and complete performance of the agreements herein contained, as its interests in said copartnership from time to time may appear; it being understood and agreed that the interest of said Mitchamore in said copartnership shall increase, and the interest of said Courier Company decrease, in proportion to the payments made by said Mitchamore, in accordance with the terms and conditions of this contract as hereinbefore stated; that so long as the terms and conditions of this agreement are complied with, and the payments aforesaid are made, all the profits of said business shall belong to said Mitchamore; the interest upon said payments hereinbefore provided being treated and taken by said Courier Company in lieu of its share of the profits of said copartnership. It is understood and agreed that said Mitchamore shall have the sole management and control of said business.

"It is further agreed that if said Mitchamore shall pay the said Courier Company the sum of $5,500, in addition to the $500 paid upon the execution of this contract, on or before September 20, 1884, with interest upon the amount hereinbefore stated from this date to the time of said payments, then said Mitchamore shall be and become the absolute owner of all the rights, property, and effects whatsoever of said Michigan Paper Company.

"In witness whereof the parties have hereunto set their hands the day and year first above written.

"COURIER COMPANY,
[In Duplicate.]          "By W. H. EDWARDS, Manager.
"C. H. MITCHAMORE."

It was during this period from September 1, 1883, to September 1, 1884, that the plaintiff sold to the defendants the goods for which it claims to be entitled to recover. Whether the goods were sold by the plaintiff to the defendants, and, if so, to what amount, and within the period claimed, if disputed, were questions of fact for the jury.

The plaintiff's theory of the case is that, whatever may be the character of the contract of September 1, 1883, the

Courier Company, and no one else, was actually interested with Mitchamore in the Michigan Paper Company's business, and was therefore jointly liable with him to the plaintiff, whose goods had built up and sustained the Courier Company's business. This is the point of plaintiff's main reliance, and it claimed there was abundant evidence in the case to have sustained its theory, had it been submitted to the jury.

Against this theory, the counsel for the Courier Company make the following points, which, as stated in their own language, are:

"1. The plaintiff did not establish the copartnership between the Courier Company and Mitchamore.

"2. It did not establish any joint liability against Mitchamore and the Courier Company.

"3. It did establish the fact that the business carried on by the Michigan Paper Company was a business the Courier Company could not lawfully engage in, being *ultra vires*.

"4. It did establish the fact that the Courier Company never received, directly or indirectly, a dollar's worth of goods or benefit from the goods of the plaintiff which were delivered to the Michigan Paper Company, and for which this claim is made.

"5. It established the fact that part of the goods of the plaintiff sold to the Michigan Paper Company, together with a large amount of other goods and outstanding accounts for merchandise, were transferred to the assignee of Mitchamore; and it did not establish the fact that the very goods for which this claim is brought may not have been included in the outstanding accounts, or included in the goods still on hand.

"6. It established the fact that the business carried on under the name of the 'Michigan Paper Company' was the business of Mitchamore and Edwards, and that the Courier Company was never interested in it.

"7. It established the fact that Edwards never had any authority to make the contracts of September 1, 1883, or September 1, 1884.

"8. It established the fact that the Courier Company never received any of the proceeds of the contract of September 1, 1884, or of plaintiff's goods."

I do not think it was necessary to establish a copartnership between the defendants to create the liability claimed against them. A corporation may, in furtherance of the object of its creation, contract with an individual, though the effect of the contract may be to impose upon the company the liability of a partner. And, as to third persons, the liability of a partner is frequently imposed, though it was not the intention of the party sought to be charged to become one, and even though a partnership could not have been made. Field, Corp. § 263; *Manhattan B. & M. Co. v. Sears,* 45 N. Y. 799; *Leggett v. Hyde,* 58 Id. 272; *Raft Co. v. Roach,* 97 Id. 378; *Catskill Bank v. Gray,* 14 Barb. 471; *Marine Bank v. Ogden,* 29 Ill. 248; *Allen v. Woonsocket Co.,* 11 R. I. 288. The defendant's first point is therefore without force.

The second point is of more consequence. If the jury had found the facts as claimed by the plaintiff,—viz., that the plaintiff sold the goods in good faith to the defendants, relying upon the Courier Company's liability, as well as that of Mitchamore, and the company, as well as Mitchamore, had the benefit of the goods, or the proceeds thereof, and they were such as both defendants were using in their business; that the defendants have received all the property claimed; and that the plaintiff once received the note of the defendants therefor; and that there was testimony given tending to prove, substantially, these facts,—I think they were sufficient to establish liability on the part of the defendants, under the authority of *Day v. Buggy Co.,* 57 Mich. 146. See, also, *Parish v. Wheeler,* 22 N. Y. 494, 508; *Whitney Arms Co. v. Barlow,* 63 Id. 62; *Thomas v. Railroad Co.,* 101 U. S. 71. There was testimony upon these several points, which should have been submitted to the jury. The defendant's second point only raised a question for the jury, and is, therefore, not well made.

The defendant's third point presents a mixed question of law and fact, and should have gone to the jury, under proper instructions from the court.

The defendant's fourth, fifth, sixth, and eighth points present questions of fact upon which testimony was given; and the credibility of that testimony, and what it proved, the jury should have been allowed to pass upon and determine.

In the view I take of the case, the defendant's seventh point, if the facts were as stated therein, would be entirely immaterial, if the jury found the other facts in the case in accordance with the plaintiff's theory. If the Courier Company received the property claimed for, it makes no difference how irregularly the defendants came into possession of the property of the plaintiff, if it was not by any immoral or criminal means. Justice requires that they should make reasonable compensation therefor.

This disposes of the several points relied upon by counsel for defendant. I find none of them well taken.

There can be no question, I apprehend, but that it was competent for the Courier Company to jointly make the purchase of the goods with Mitchamore, which he ordered on their joint account, and which the contract of September 1, 1883, authorized him to make. The goods thus received, if used, or the proceeds controlled, by the Courier Company and Mitchamore, should be paid for by them; and, under the testimony given, the facts should have been submitted to the jury, and the circuit judge erred in holding otherwise.

The judgment must be reversed, and a new trial granted.

The other Justices concurred.