### WALLERSTEIN v. ERVIN et al.

#### (Circuit Court of Appeals, Third Circuit. December 9, 1901.)

1. BANKRUPTCY—PROVABLE CLAIMS—ADVANCES BY PARTNER.

A partner cannot claim, in competition with firm creditors, for advances, whether of goods or money, to his partnership.

2. CORPORATIONS—CONTRACTS ULTRA VIRES—ESTOPPEL.

While a contract of partnership entered into by a corporation with natural persons may be ultra vires, and not enforceable, while executory, nevertheless, after it has been executed, and the corporation has embarked its funds in, and supplied goods to, the firm, such funds and goods cannot be exempted from liability for the partnership debts, or withdrawn by the corporation after insolvency of the partnership, and to the prejudice of its general creditors.

3. BANKRUPTCY—CORPORATION AS PARTNER OF BANKRUPTS—ULTRA VIRES.

Where a corporation entered into partnership articles with individuals, and contributed to the capital of the firm and shared in its management, to the extent of such acts it executed the contract of partnership, and became a partner de facto; and it cannot ignore the status thus created, and, by asserting that the partnership agreement was ultra vires, prove a claim against the firm in bankruptcy, in competition with general creditors, for advances made or goods sold to the partnership.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania, in Bankruptcy.

For opinion below, see 109 Fed. 135.

N. Dubois Miller, for appellant.

Albert B. Weimer (Reath & Reath, of counsel), for appellees.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

DALLAS, Circuit Judge. We have no doubt that the agreement of December 15, 1899, between Ervin, Page & Co., Incorporated,

of the one part, and Ervin & Fagan, trading as Barnes & Co., of the other part, would, if valid, have created a copartnership, and that it was therefore an agreement which the corporate party thereto was not empowered to make. But this affirmance of the proposition upon which the learned counsel of the appellant has mainly based his contention does not involve the acceptance of his conclusion. The record shows that the corporation of Ervin, Page & Co. did in fact assume the partnership relation in question, and that it continued therein until shortly before R. T. Ervin & Co. (successors to Barnes & Co.) were adjudged bankrupts; and the only question now for decision is, not whether Ervin, Page & Co., in making the agreement of December 15, 1899, exceeded its corporate powers, but whether, by reason of its de facto joinder in the partnership of R. T. Ervin & Co., its claim against the estate of that firm in bankruptcy was not, on objection made by the trustee on behalf of creditors, properly disallowed. By the terms of the agreement the appellant was to contribute for the purposes of the business a sum not to exceed $15,000. It, however, actually did advance, from time to time, several sums of money, which in the aggregate exceeded that amount, and for this excess, viz. $10,733.33, and for "goods sold and delivered," to the price value of $5,565.78 (exclusive of $2,000, not now in question), it demanded allowance of proof. The $15,000, which it is admitted was "advanced in pursuance of the agreement, and which was put in at the risk of the business," was expressly omitted from the claim. But the distinction suggested by this concession rests upon no legal foundation. The moneys advanced in excess of the amount agreed to be contributed were, it is true, in many, if not in all, instances, called "loans," and the merchandise supplied was no doubt regarded by the parties themselves as having been "sold," and it may well be conceded that upon any accounting between the partners the appellant would, after satisfaction of the firm debts, be entitled to priority of credit for its surplus advances of either kind; yet as the proof proposed would, if allowed, have reduced the fund to which the general creditors of the firm were constrained to look for the partial payment of their claims, the law imperatively required its rejection. Whatever may have been the understanding of the parties, or their respective rights inter se, there can be no doubt that, in fact and in law, not only the $15,000 agreed to be contributed, but also the additional money advanced and the goods supplied, were, as to creditors, embarked in the business of the firm. They augmented its capital and enhanced its credit, and therefore could not in any manner be exempted from liability for its debts. Ex parte Sillitoe, 1 Glyn. & J. 374; Ex parte Hargreaves, 1 Cox, Ch. 440; In re Mason [1899] 1 Q. B. 810; Strattan v. Tabb, 8 Ill. App. 225; In re Reiser, 19 Hun, 202; In re Savage, Fed. Cas. No. 12,381; Houseal and Smith's Appeal, 45 Pa. 484; Barr v. McFall, 131 Pa. 304, 18 Atl. 876.

These transactions were, at the time of the adjudication of bankruptcy, fully executed, and the appellant could not avoid the legal consequences of what it had already completely done by showing

that in so doing it had overstepped the bounds of its lawful authority. The trustee in bankruptcy did not seek to enforce an ultra vires contract, nor to compel the performance of any of its provisions. He simply insisted that a status which had been created by what had actually occurred should not, at the instance of a party to its creation, and to the prejudice of innocent third parties, be utterly ignored, and we think that in sustaining this insistence the court below was clearly right. Bank v. Gray, 14 Barb. 471; Cleveland Paper Co. v. Courier Co., 67 Mich. 152, 34 N. W. 556; Oil Creek & A. R. R. Co. v. Pennsylvania Transp. Co., 83 Pa. 160; Wright v. Line Co., 101 Pa. 204, 47 Am. Rep. 701; Boyd v. Carbon Black Co., 182 Pa. 206, 37 Atl. 937.

The order of the district court approving the referee's disallowance of the appellant's claim is affirmed.