### In re R. T. ERVIN & CO.

#### (District Court, E. D. Pennsylvania. March 12. 1902.)

#### No. 809.

BANKRUPTCY—PROVABLE DEBTS.

The fact that a corporation entered into an ultra vires contract, by which it became a de facto partner in an existing firm, does not affect its rights as a creditor of such firm upon a debt previously contracted: and where, through a mutual mistake, the indebtedness was overlooked, and remained unpaid until the firm became bankrupt, the corporation may prove the same in bankruptcy upon an equality with the claims of other creditors.

In Bankruptcy. On certificate of referee and exceptions to referee's decision allowing claim of Ervin, Page & Co., Incorporated.

Following is the report of the referee, Edward F. Hoffman:

The referee certifies to the court the following question as to the allowance of a claim of Ervin, Page & Co., in the amount of $2,000, which claim, it is

alleged by the claimant, is not covered by the decision of the referee confirmed by the district court and circuit court, disallowing a claim in excess of $17,000 filed by this claimant.

The facts are, briefly, as follows:

Prior to January 1, 1900, Benjamin S. Fagan and Russel T. Ervin, under the firm name of Barnes & Co., were engaged, in the city of Philadelphia, in the business of keeping a restaurant and selling teas and coffees. Ervin, Page & Co., Incorporated, a corporation organized under charter in the state of New Jersey, were engaged in the city of Philadelphia in the business of importing teas and coffees. In 1899 this corporation made sales of teas and coffees to Barnes & Co. in the amount of $2,000, which amount ($2,000) is the subject of this claim.

On December 15, 1899, subsequent to the sales mentioned, the corporation of Ervin, Page & Co. entered into a written agreement of partnership with Benjamin S. Fagan and Russel T. Ervin, hitherto trading as Barnes & Co., by the terms of which agreement the firm name of the partnership was changed to that of Russel T. Ervin & Co., and the partnership was to commence January 1, 1900. By this agreement the corporation agreed to contribute $15,000 to the enlargement of the business of the new firm of Russel T. Ervin & Co., as reorganized under said agreement, and provided for a partnership participation in the profits and management of the business by the corporate partner.

At the time that this new partnership was entered into it was supposed by the parties thereto that there was no indebtedness then existing from the firm of Barnes & Co. to Ervin, Page & Co.; but it subsequently developed, and is an admitted fact, that through a mistake in bookkeeping the before-mentioned debt of $2,000 was, on January 1, 1900, due by Barnes & Co. to Ervin, Page & Co., but this fact was not discovered until the latter part of October or early part of November, 1900, when the books of the corporation were examined by an expert accountant.

The original claim filed presented two items,—$10,773.33 "for cash loaned," describing the claim as "balance of cash loaned after deducting the amount of $15,000 invested at the risk of the business," and an item of $7,565.78 for "merchandise sold and delivered." It appears of this amount $2,000 was for sales made by Ervin, Page & Co. to Barnes & Co.

In passing upon this claim the referee found that as to money contributed by virtue of a partnership agreement the claimant could not recover, as it has sought to obtain the benefits of a partner, and could not defend on the ground of "ultra vires" to the detriment of creditors after the contract had been executed.

As to the sale of goods made prior to the partnership agreement, the referee found as follows:

"As to a portion of the claim, the amount of indebtedness contracted before the execution of the agreement, if it can be shown that there was no arrangement by which this debt was merged into the indebtedness created under the agreement, a proof of claim for that amount should be admitted. The claim as presented is disallowed, with leave to the claimant to offer proof of claim of money due prior to the agreement and not arising from any transaction connected with said agreement."

The claimant now makes demand for $2,000, admitted to be due by R. T. Ervin & Co., successors to Barnes & Co., if the said debt of $2,000 is not to be considered as a contribution under the partnership agreement, and therefore controlled by the decision of this court confirmed by the circuit court of appeals.

It is claimed by the trustee that the corporation, having allowed this money to remain uncollected, must be considered to have done so for the purpose of adding that much to its cash contribution under the partnership agreement, and that it therefore forms part of the fund covered by said agreement, and as to which the corporation are not protected by the doctrine of ultra vires.

The referee's understanding of the opinions of the district court and circuit court of appeals is that the reasoning of these opinions only applies to the

moneys contributed after the date of the partnership agreement. To hold otherwise would submit the corporation to the full liabilities of partnership.

The stockholders of the corporation are fairly chargeable with the consequences of the illegal acts of the directors, but should not suffer loss of a legal debt because of subsequent misconduct. The doctrine of ultra vires is of comparatively modern origin, and its purpose is to protect stockholders from entering into business relations foreign to the purposes of the corporate grant. The public is also to be protected, but the loss of the right to recover affords sufficient protection. If directors of corporations could involve the stockholders in full partnership liabilities, the consequences would be most unjust and disastrous.

The illegal conduct of the directors of the corporation in this case did not begin until after the so-called articles of partnership had been entered into. The directors have a right to enforce contracts entered into before that date.

Amounts involved do not affect legal principles, but may serve to illustrate results. Suppose that the figures in the case in hand were reversed, and that $17,000 was due from the bankrupt's estate for sales legally made prior to the partnership agreement, and that only $2,000 had been contributed under the partnership agreement, it would seem to be an extreme view to hold, for instance, that $2,000, contributed after the partnership agreement had been entered into, controlled all debts previously contracted. It would be, in effect, holding that after the mere execution of a partnership agreement by a corporation, though the agreement be ultra vires, no claim could be made by the corporation for sales previously made. It cannot be disputed that the partnership agreement was an ultra vires act. The stockholders, on discovering that the corporation organized for the sales of teas and coffees had entered into an agreement for the conduct of restaurants, could have enjoined further proceedings and obtained relief from the courts against their directors. Therefore it would appear clear that if the bankrupts, in the proper course of business, were indebted to Ervin, Page & Co., Incorporated, the right to recover this indebtedness should not be lost to the stockholders of the corporation, because articles of partnership, not within the limit of the corporate powers, had been entered into.

The agreement between Ervin, Page & Co. and R. T. Ervin & Co. does not mention prior indebtedness. It stipulates that the $15,000 mentioned therein was contributed for the enlargement of Ervin, Page & Co.'s business on lines therein stated, the opening of new restaurants, and under joint management. All moneys embarked by Ervin, Page & Co. in this new enterprise, whether in the form of sales on credit, cash contributed, and loans made, cannot be recovered by the corporation claimant, because it is, on the ground of estoppel, estopped from making the defense of ultra vires to the illegal transactions of its directors resulting in detriment to other creditors. Sales made previous to the agreement, and not in contemplation of it, cannot be affected by it, unless the agreement be construed to involve the parties thereto in the full liabilities of partnership. All the cases cited are of contracts entered into in pursuance of agreements ultra vires in character, where the corporate creditor seeks to recover the debt arising under the agreement, and escape liability on the ground of ultra vires.

In Bank v. Gray, 14 Barb. 471, the claim is on notes given in pursuance of an ultra vires partnership agreement. Indebtedness in Oil Creek & A. R. R. Co. v. Pennsylvania Transp. Co., 83 Pa. 160, and Wright v. Pipe Line Co., 101 Pa. 204, 47 Am. Rep. 701, arises from ultra vires contracts sought to be avoided. The claim for $2,000 in the case in hand does not arise under the agreement. If the trustee in bankruptcy can enforce this agreement against the corporation as to this indebtedness arising on book accounts two years prior to the agreement, then this agreement must be construed to establish not a quasi partnership, but an "actual' partnership." To decide this would abolish the doctrine of ultra vires.

The creditor is estopped from making the defense of ultra vires to transactions arising under the partnership agreement.

The trustee cannot enforce the partnership agreement as to transactions not entered into in pursuance of it.

In passing upon the claim first filed, the circuit court says, opinion by Dallas, J.:

"The trustee in bankruptcy did not seek to enforce an ultra vires contract, nor to compel the performance of any of its provisions. He simply insisted that a status which had been created by what had actually occurred should not, at the instance of a party to its creation, and to the prejudice of innocen', third parties, be utterly ignored."

This dictum appears to be in accord with the views expressed by the referee. For the reasons stated, the claim in the amount of $2,000 is allowed.

Reath & Reath and Albert B. Weimer, for trustee.

N. Dubois Miller, for claimants Ervin, Page & Co.

J. B. McPHERSON, District Judge. I think the referee was right in allowing this claim. The argument of the exceptant is based upon the proposition that the money in dispute was "left in the business" of the bankrupt by the claimant,—carelessly, it may be, and not by design, but left there at all events,—thus swelling the apparent assets of the enterprise. From this proposition the conclusion is said to follow that the claim of the corporation partner must be postponed to the claims of the general creditors. This conclusion, in my opinion, is not sound, and finds no support in Wallerstein v. Ervin (C. C. A.) 112 Fed. 124. Indeed, the sum now in dispute was expressly declared by the court of appeals to be outside the scope of that decision; and I am in a position to say with confidence that the district court, in deciding the case below (109 Fed. 135), gave the matter no consideration. The facts necessary now to be taken into account are these: When the illegal partnership was formed between Barnes & Co. and Ervin, Page & Co., Incorporated, under the firm name of R. T. Ervin & Co., Barnes & Co. owed the claimant Ervin, Page & Co., Incorporated, a valid debt of $2,000, but by some mistake this debt was overlooked, and it was not provided for by the settlement that preceded the formation of the partnership. The oversight did not obliterate the debt, however, nor did the formation of the partnership transform the debt automatically into a virtual advance toward the partnership business. It is true that, if the debt had been known and had been paid, the partnership would have been $2,000 poorer, and it may be conceded that its apparent assets and its credit were therefore larger by that sum; but this was an inevitable incident of an innocent mistake. The corporation was decided to be a de facto partner, and its claim upon advances to the partnership was postponed to the claims of general creditors; but its disability as a partner does not prevent it from prosecuting a valid claim against the other partner, contracted before the illegal partnership was formed, and never intentionally used for the benefit of the partnership business. The claim does not grow out of the partnership relation, but out of an independent and antecedent transaction.

The allowance of the claim is approved.