E. L. MARSH v. W. E. DAVIS, *et al.*

1. PAROL TESTIMONY; *Resulting Trust.* Parol testimony is admissible to prove a resulting trust in relation to real estate, and that land purchased in the name of one partner for the use and benefit of the firm, raises a resulting trust which will be enforced.

2. PARTNERSHIP; *Formality.* The contract of partnership is one of those which do not require to be entered into with any particular formalities, and a valid partnership may be constituted without any deed or writing.

3. VALID PARTNERSHIP *under Parol Agreement; Statute of Frauds.* Where a firm, consisting of three partners, is engaged in the milling business, and owns and is in the actual possession of certain personal property and tracts of land, all used for partnership purposes and in connection with the mills, and a fourth person is admitted into the partnership under a verbal agreement and the purchase of an equal share therein, and such fourth party is let into the possession of the partnership property, and all the parties act on the agreement for nearly eight years, such person is not to be deprived of his interest in the real estate of the partnership on account of the statute of frauds. In such a case, the statute ceases to be applicable.

4. SUBPENA DUCES TECUM; *Production of Paper; Error.* Where, upon the application of the plaintiff, a subpena is directed to a person therein named, who is the defendant in the action, requiring him to attend upon the trial to testify as a witness, and the subpena contains a clause requiring the witness to bring with him a written memorandum under his control, which is competent evidence on the part of the plaintiff, and such witness appears in the court, is sworn as a witness for the plaintiff, and has the memorandum under his control and in his hands while upon the witness stand, it is error for the court to refuse to make him produce it as evidence in the case. (Code, §§ 325, 368.)

*Error from Allen District Court.*

ACTION for the dissolution of a partnership, and an accounting between the parties, brought by *E. L. Marsh* against *W. E. Davis,* George S. Davis and Elias Bruner, on January 4, 1883. The petition alleged, among other things, that on or about March 13, 1875, at Iola, in this state, plaintiff entered into a partnership with the defendants under the firm-name of W. E. Davis & Co., on the basis of an undivided and equal

one-fourth interest each, for the purpose of carrying on the business of a grist and saw mill, and as wholesale and retail dealers in flour, wheat, corn-meal, lumber, etc.; that the partnership was formed for an indefinite period of time; that the plaintiff and defendants conducted the business together until a recent time, when, as the petition alleged, the plaintiff was excluded from participation in the control and management thereof. The defendants, on February 3, 1883, filed a motion to make the petition more definite and certain, and upon the hearing thereof the court sustained the motion as to the third, seventh and a portion of the sixth grounds, and ordered the plaintiff to amend his petition accordingly. To this ruling and order of the court the plaintiff excepted. On April 2, 1883, the plaintiff filed an amended petition, and on May 31, 1883, the defendants filed their answer, which contained, first, a denial of the existence of any partnership under the name and style of W. E. Davis & Co. whereof the plaintiff was a member, or that the plaintiff has ever become a member of the firm of W. E. Davis & Co. The answer further contained a general denial of all the allegations and averments of the petition.

Trial at the November Term, 1883, before Hon. H. W. Talcott, district judge. The plaintiff asked the court to refer the case, to which the defendants objected, and demanded a jury to try the issues, which demand for a jury the court sustained, and refused to submit the same to a referee. The plaintiff excepted thereto. Thereupon a jury was impaneled in the case. The plaintiff offered his evidence, and after he had introduced all that the court would admit, the defendants interposed and filed a demurrer thereto, upon the ground that no cause of action or defense was proved. The court sustained the demurrer, and plaintiff excepted. The plaintiff then filed a motion for a new trial, which was overruled, and plaintiff excepted. Thereupon, and on November 17, 1883, the court rendered judgment in favor of the defendants for costs. Plaintiff excepted, and brings the case here.

*A. C. Bogle,* and *J. H. Richards,* for plaintiff in error.

*C. F. Hutchings,* and *Goodin & Keplinger,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: This was an action for the dissolution of a partnership and for an accounting. The evidence conduced to show that prior to March 12, 1875, there existed at Iola, in this state, a firm composed of W. E. Davis, Geo. S. Davis, and Elias Bruner, engaged in the milling business under the name of W. E. Davis & Co.; that the firm were then the owners of a grist and saw mill and certain personal property and tracts of land, all used for partnership purposes and in connection with the mill; that on March 12, 1875, it was verbally agreed between the members of the firm that the plaintiff should be taken into the partnership as a member thereof, on the following terms: All the property of the partnership was valued at $12,000; each partner was to have an equal share therein; the plaintiff was to pay $3,000, but it was understood "that he was to have his share in the partnership without interest on this sum until such a time as the proceeds of the mill or business made it;" that it was further agreed among all the members that the partnership should be consummated by an entry in the journal and ledger books, setting forth that the parties had associated themselves together as partners, and the amounts invested by each member were to be shown by his credits on the ledger; that the entries upon the journal and ledger were made in accordance with this agreement; that on March 13, 1875, the plaintiff was permitted to go in possession jointly with the other parties; that all the parties acted on the agreement until about the middle of November, 1882; that the partnership, after March 13, 1875, continued to do business under the firm-name of W. E. Davis & Co.; that it was the particular duty of plaintiff to keep the books of the firm, and look after such other business as he could; that at the

formation of the new partnership on March 12, 1875, the grist mill was somewhat dilapidated and was not making good flour; that the saw mill was very old and pretty well worn out; that W. E. Davis and G. S. Davis were brothers; that the wife of plaintiff was the sister of W. E. and G. S. Davis, and also the sister of the wife of Elias Bruner; that the plaintiff kept the books and also collected for the firm, borrowed money, brought suits against different parties, and did almost everything that was to be done to further the interests of the firm; that the defendants allowed him to hold himself out to the public as a partner, to sign the firm-name to negotiable paper, subscriptions to public enterprises, and official bonds, to bring suits and defend suits as a partner; that land was condemned for a mill-dam; that plaintiff paid the money therefor from the proceeds of the business; that a dam was constructed across the Neosho river, where the mill is now located; that the old mill was taken down and moved to the new location in the spring of 1880; that a new mill was made out of it; that is, the old mill was rebuilt and considerable new machinery put in it; that the expense of doing this was over $4,000; that about $1,500 was borrowed; that the balance of the money was paid from the proceeds of the mill; that the defendants accepted $110 they owed him prior to March 12, 1875, as part payment of the $3,000, and used it in the partnership business; that the plaintiff also paid between $50 and $60 upon the purchase-price of his interest in the firm after he became a member thereof; that during the partnership he drew out $1,900; that about the middle of November, 1882, plaintiff was excluded by the defendants, without any good reason or excuse, from further participation in the partnership, and was forbidden by the other partners from exercising any rights or control over the partnership business or property; that at the time of such exclusion the property of the firm was worth about $30,000, having increased from $12,000 in 1875 to $30,000 in 1882.

After the introduction of all the evidence on the part of the plaintiff, that the court would admit, the defendants interposed, and filed a demurrer thereto, upon the ground that no

cause of action was proved. The court sustained the demurrer, and plaintiff excepted. This is the important ruling complained of.

To sustain this ruling, the defendants contend that the contract of March 12, 1875, being for an interest in real estate, is, as to such real estate, void, under the statute of frauds, and that, being void as to the real estate, it is also void as to the personal property and the right to become a partner, which, as defendants allege, were parts of an entire and indivisible contract. The proposition is conceded by the defendants, that where real estate is purchased with partnership funds, for partnership purposes, after the partnership has been formed, such real estate is to be treated as part of the partnership property, and as a consequence personal estate. It is also well settled "that parol testimony is admissible to prove a resulting trust in relation to real estate, and that land purchased in the name of one partner, for the use and benefit of the firm, raises a resulting trust which will be enforced." (Story's Eq. Jur., §§ 1206–7; *Scruggs v. Russell*, 1 McCahon, [U. S. Ct. Kas.,] 39.) These principles are applicable to this case, and decisive against the defendants. When the plaintiff was taken into the partnership of W. E. Davis & Co., on March 12, 1875, as the firm was then in existence, in the possession of real estate, purchased for partnership purposes and then appropriated to those purposes, such real estate was partnership property, and the plaintiff, by acquiring an interest in the partnership by verbal contract, and thereafter having acted under the contract as one of the partners, with the consent of all the members, is not to be deprived of his interest in the partnership, either as to the personal property or real estate, on account of the statute of frauds. The cases establish that a partnership in any branch of trade or business may be shown by parol as an existing fact, and then whatever real estate is held for the purposes of such business is regarded as an incident thereto, and the law will imply a trust in favor of the partnership, however the lands be held in law. For an illustration, if a mercantile firm carrying on the business of

buying and selling goods, and, as an incident to the business, owning and having in possession the building in which the business is transacted, takes into the partnership another person, who purchases an interest in the partnership, and as a partner is let in possession of the partnership property, and all the parties act on the agreement, such person is not to be deprived of his right in the real estate held by the firm at the time he became a member thereof, because his agreement with the other partners was not in writing. If the partnership be proved, that will suffice to establish a partnership trust in the land intended and treated by all the partners as partnership property, however the land be held, and this will not be incompatible with the conditions of the statute of frauds. (*Scruggs v. Russell*, supra; 1 Lindley on Partnership, 87–90; *Bird v. Morrison*, 12 Wis. 138; *Whaling Company v. Borden*, 10 Cush. 458; Browne on Frauds, §§ 259 to 263.)

We think it is immaterial whether the real estate in this case was bought with partnership funds for partnership purposes, after the formation of the partnership, or whether a part of the real estate was put into the firm as partnership property at the formation of the new firm on March 12, 1875, if the parties have acted on the agreement and become partners. In such case, the statute of frauds ceases to be applicable. (*Smith v. Tarleton*, 2 Barb. Ch. 236; *Bissell v. Harrington*, 18 Hun, 81.)

It is further claimed on the part of the defendants, that the plaintiff was not to acquire any interest in the partnership until he paid the $3,000 agreed upon; that this was a condition precedent, and that as the plaintiff failed to pay the same, he never became a partner or had any interest in the partnership property as a partner. It is a sufficient answer to all this, that the evidence is the other way; therefore, we need make no further comment upon this claim. (*Christie v. Barnes*, just decided.)

As the court below tried the case upon an entirely erroneous theory, it is unnecessary to refer to the various alleged errors concerning the rejection of competent evidence. We may say,

however, that the rules governing the admission of evidence were frequently and flagrantly violated. We cite one instance: In November, 1881, there had been an inventory of the property of the partnership taken, and an adjustment made between the partners of the accounts. After the inventory was completed, it was placed in the safe of the mill, and remained there until the middle of October, 1882. This inventory was competent and important evidence at the trial. The plaintiff issued a *subpena duces tecum* under the provisions of § 325 of the code, to W. E. Davis, one of the defendants, directing him to appear and testify as a witness upon the trial, and requiring him as such witness to bring with him the inventory. The witness appeared, and was duly sworn. In accordance with the subpena, he brought the inventory into court, and had it in his hands at the time he was upon the witness stand. He was then asked to produce it. The defendants objected, and the court sustained the objection, and in sustaining the objection, said:

"I can't see for the life of me that the defendant is bound under the law to produce that instrument as evidence. There are provisions of the statute which perhaps may give the plaintiff such an advantage or such a right, but there is nothing to indicate that the plaintiff has proceeded under that section of the statute, as the subpena has been issued under § 325."

Exactly what the court meant by these remarks, it is difficult to understand, but if § 368 of the code was intended to be referred to as prescribing the method to obtain an inspection of the written memorandum, that section does not justify the action of the court. It is expressly provided therein as follows:

"This section is not to be construed to prevent a party from compelling another to produce any book, paper or document when he is examined as a witness."

Therefore the ruling of the court in refusing to make the witness produce the memorandum in his possession was palpably wrong, and we think the counsel for plaintiff are not far out of the way in saying, "The trial court erred almost

from one end to the other." It is not possible that upon another trial these errors will be repeated.

The motion to dismiss cannot be sustained, for, although the suggestions of amendments are not inserted in the body of the case in their appropriate places, they are attached to and made a part of the case and are placed in connection with the case. The practice, however, of thus attaching suggestions of amendments is not to be commended. It gives this court increased labor, and frequently renders an intelligible examination of the case almost impossible. (*Dowell v. Williams,* just decided.)

The judgment of the district court will be reversed, and the cause remanded for further proceedings in accordance with the views herein expressed.

All the Justices concurring.