CHARLES N. KELLY & another *vs.* WILLIAM E. BIDDLE & another.

Essex. November 7, 1901. — November 26, 1901.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, & LORING, JJ.

*Contract*, Validity. *Corporation*, U̲ltra vires. ·*Estoppel.*

The creditors of an insolvent company, one of them being a corporation, entered into a joint undertaking to purchase the stock in trade of the insolvent company, each contributing a certain amount required, and to employ a general manager to finish up the business and dispose of the property. The enterprise was carried out and resulted in a profit. In a suit in equity by one of the partners in the undertaking to recover his share of the balance in the hands of another, neither of them being the corporation, it was *held*, that, even if taking part in such an arrangement by a corporation in order to make its loss as small as possible was *ultra vires*, there was no such illegality in the transaction as to prevent the court from giving the plaintiff his share of the money in the hands of the defendant after the contract had been performed, and, moreover, if the corporation was acting without authority, the defendant was not in a position to set up the defence of *ultra vires* in reference to the fruits of the joint enterprise.

BILL IN EQUITY by Charles N. Kelly and George L. A. Kelly, both of Haverhill, copartners, doing business under the style of Kelly Brothers, against William E. Biddle and Thomas D. Nelson, both of Amesbury, setting forth, that the plaintiffs and defendants associated themselves together as copartners on February 20, 1897, for the purpose of purchasing the stock in trade of the Amesbury Carriage Company, a corporation formerly having its place of business in Amesbury, with a view

of selling the stock and making a profit thereon and dividing the profits equally among Kelly Brothers, Nelson and Biddle, one third to Kelly Brothers, one third to Nelson, and one third to Biddle; that the copartners purchased the stock and that it had been sold and turned into money, all of which had come into the hands of the defendant Biddle, and that the plaintiffs had demanded an account from Biddle but had been unable to obtain one, and that Biddle had converted a part of the money to his own use, and praying that an account might be taken and a decree made ordering Biddle to pay to. the plaintiffs their share of the money, filed April 18, 1899.

The defendant, Biddle, in his answer alleged, that on or about February 20, 1897, the Amesbury Carriage Company was insolvent and had made an assignment for the benefit of all its creditors, and that the plaintiffs, the defendants Nelson and Biddle and other creditors of the insolvent corporation, including the Charles Wing Company, a corporation, entered into the joint undertaking described in the opinion of the court, which the defendant Biddle contended was an illegal contract because one of the parties to it was a corporation and therefore could not be enforced.

The Superior Court made a decree confirming a master's report in favor of the plaintiffs, and ordered that the plaintiffs and the defendant Nelson each have judgment against the defendant Biddle in the sum of $1,067, with interest from the filing of the bill. From this decree the defendant Biddle appealed.

A. W. Reddy, Jr., for the defendant Biddle.

E. B. Fuller, for the plaintiffs.

KNOWLTON, J.  The decree in this case is in accordance with the master's report, to which no exceptions are taken. The appeal of the defendant Biddle is founded on the denial of his motion to dismiss the bill on the ground that it appears from the pleadings and the master's report that it is "a bill seeking to enforce an illegal contract or joint undertaking, inasmuch as it seeks to enforce the distribution of the alleged profits arising out of the execution of an unlawful undertaking, namely, the entering into partnership of corporations with individuals." The findings show that the plaintiffs, who were creditors of the insolvent company, and the defendants Biddle and Nelson,

made an agreement to purchase the stock in trade of the insolvent, and to employ one Worthen who had been general manager of the insolvent, to manage the business of finishing it up and disposing of it, and in order to raise money to pay for the stock, agreed that each of the three parties should contribute $1,000 in money and give a note for the balance, to be indorsed by the parties. Each of these accordingly contributed this sum, and afterwards the Charles Wing Company, a corporation which was also a creditor, contributed the same sum. A few days later notes were made for use in the business, which were indorsed by all these parties, including the Charles Wing Company. Their undertaking has been completed, and this suit is brought to recover the plaintiffs' share of the balance in the hands of Biddle. The appellant contends that the arrangement was so affected with illegality by reason of the participation in it of the Charles Wing Company that a court of equity will enforce no rights which are founded on it. He relies on the case of *Whittenton Mills* v. *Upton*, 10 Gray, 582, in which it was held that a corporation cannot legally enter into a partnership. It is doubtless true that corporations, under our laws, are not authorized to become members of an ordinary partnership; but in this case there is no ground for a contention that the final arrangement was objectionable otherwise than as being *ultra vires* on the part of the Charles Wing Company, and we are not prepared to hold that this objection is well founded. There is no doubt that the corporation, as a creditor of the insolvent, might make any reasonable and proper arrangement not in violation of law to make its loss as small as possible. The common objections to a partnership with a corporation were not involved in this arrangement. Although there was a community of interest in the proceeds, including the profits of the undertaking, it was agreed that the business should be conducted by a general manager hired for the purpose. This business was only temporary, and the money was contributed and the labor employed in order to close out and turn into money as advantageously as possible a stock in trade. We are of opinion that there was no such illegality in the transaction as to prevent the court from giving the plaintiffs their share of the money in the hands of the defendant after the execution of the contract. There are numerous cases

which treat the pecuniary results of partnerships between cor-porations and individuals as subject to the protection of the courts. See *Allen* v. *Woonsocket Co.* 11 R. I. 288; *Butler* v. *American Toy Co.* 46 Conn. 136; *Catskill Bank* v. *Gray*, 14 Barb. 471; *Conkling* v. *Washington University*, 2 Md. Ch. 497; *New York & Sharon Canal Co.* v. *Fulton Bank*, 7 Wend. 412.

If we assume in favor of the defendant, without deciding, that the Charles Wing Company was acting without authority of law, the defendant is not in a position to avail himself of the defence of *ultra vires* in reference to the fruits of the joint enter-prise. Under the doctrine stated in *Nims* v. *Mount Hermon Boys' School*, 160 Mass. 177, there is no good reason why the court should refuse to give the plaintiffs a remedy.

*Decree affirmed.*