## MILLERS' INDEMNITY UNDERWRITERS v. PATTEN et al. (No. 1892.) *

(Court of Civil Appeals of Texas. Amarillo. Feb. 8, 1922. Rehearing Denied March 15, 1922.)

1. Master and servant ⬠361—Partner not an "employee" within Compensation Law.

One who is a partner with a company operating a cotton gin wherein he is accidentally killed is not an employee of the company within the Workmen's Compensation Law (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Employé.]

2. Partnership ⬠21—Agreement to operate cotton gin and purchase interest therein, consummated by delivery of deed, held to result in partnership.

Where one agrees with another to operate a cotton gin, and to purchase a one-third interest, to be paid for by salary, and such agreement has been consummated by the delivery of a deed, a partnership results.

3. Partnership ⬠21—Executory contract to form partnership does not create relationship until consummated.

An executory contract to form a partnership does not create the relation of partners between the parties until it is consummated or executed, and, if the agreement provides a condition precedent to the formation of the partnership, then it will not come into existence until the condition has been met.

4. Partnership ⬠21—Condition precedent in agreement to form partnership may be waived.

A condition precedent in an agreement to form a partnership may be waived, and, if the parties actually proceed with their business, intending to operate it as partners under the agreement, they may be held to be partners, though something may remain to be done to fully complete their agreement.

5. Corporations ⬠379—In absence of charter provision, corporation may not enter partnership.

A corporation, unless its charter authorizes it to do so, may not enter into a partnership.

6. Partnership ⬠218(2)—Instruction as to decedent's relation to employer as partner held incorrect.

In a suit to set aside an award of compensation under the Workmen's Compensation Law (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91) for death, involving the issue as to whether deceased was a part owner of a cotton gin, and in partnership with the company operating the gin at the time of injury, a charge defining a partnership, and making an agreement to share the losses a requisite to a partnership, held incorrect.

7. Master and servant ⬠418(3)—Objection to instruction in compensation suit held too general.

In a suit to set aside an award of compensation under the Workmen's Compensation Law (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91) for death involving the issue as to whether deceased was a partner, an objection to a charge defining partnership that it was not the law, was confusing, and calculated to influence the jury to make an improper answer to a special issue submitted, held too general to require a reversal.

8. Insurance ⬠5—Insurer cannot take advantage of own violation of law.

A company writing compensation insurance under the Workmen's Compensation Law (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91) cannot avoid liability on the policy on the ground that it was doing business without license from the commissioner of insurance and banking.

9. Master and servant ⬠405(1)—Finding of notice of claim for compensation sustained.

Evidence held to show that the insurance carrier had received due notice of claim for compensation under the Workmen's Compensation Law (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91).

10. Master and servant ⬠398—Strict compliance with requirements of compensation law as to notice of claim may be waived.

Under the Workmen's Compensation Law (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—43) the Industrial Accident Board may waive strict compliance with the requirements as to notice and the filing of claims before it.

Appeal from District Court, Hall County; J. A. Nabers, Judge.

Suit by the Millers' Indemnity Underwriters against Maggie May Patten and others, to set aside an award of the Industrial Accident Board granting compensation under the Workmen's Compensation Law. Judgment for defendants, and plaintiff appeals. Affirmed.

Harry P. Lawther, of Dallas, for appellant.

A. T. Cole, of Clarendon, for appellees.

BOYCE, J. The appellant, Millers' Indemnity Underwriters, brought this suit against appellees, Maggie May Patten and her minor children, to set aside an award of the Industrial Accident Board, which granted the appellees compensation under the Workmen's Compensation Law (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91) for the death of W H. Patten, the husband and father of appellees.

W. H. Patten was killed while operating some of the machinery in a cotton gin at Brice, Tex. The Memphis Cotton Oil Company, a corporation, held the legal title to the gin at such time, and had a policy writ-

---

⬠For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted May 3, 1922.

ten by the appellant providing compensation insurance for its employees under the provisions of the Workmen's Compensation Law. The award of compensation was based on allegations that W. H. Patten was an employee of the Memphis Cotton Oil Company within the meaning of said law. The appellant denied that he was an employee of the oil company, and specially pleaded that he was a part owner of the said Brice gin, and in partnership with the oil company in the operation thereof. The only issue submitted to the jury was as to whether W. H. Patten was a "partner of the Memphis Cotton Oil Company in the operation of the Brice gin at the time of the accident which caused his death." The jury answered this issue in the negative.

The principal questions raised on appeal center around the submission of the issue of partnership. Appellant contends, under the first two propositions presented, that the trial court should have directed a verdict in its favor on the theory that the evidence conclusively established a partnership between Patten and the oil company. Its fourth proposition attacks the finding of the jury on the issue of partnership, and the fifth proposition complains of the trial court's definition of partnership. The appellee's counter propositions are: (1) That there was no consummated partnership, because the agreement, if any, for partnership contemplated the conveyance to Patten of an interest in real property and the agreement was not expressed in writing and no conveyance actually made; (2) that there would be no partnership because the oil company was a corporation without the power to form a partnership; (3) that the agreement, if any was made, was only to share profits, and created no partnership; (4) that there was sufficient conflict in the evidence as to present an issue for decision by the jury as to the real nature of the agreement between the deceased and the oil company. We make the following statement of the facts to be considered in the disposition of these propositions:

The Brice gin was located in the vicinity of Memphis, Tex., and consisted of seven acres of land, on which was located a cotton gin, also a dwelling, used for the residence of the manager of the gin, and perhaps some other improvements. Prior to July, 1919, it was owned and operated by the Brice Gin Company, a corporation. In the early part of July, 1919, W. H. Patten had some negotiations with the owners of this gin for the purchase thereof, and at this time had some conversation with F. U. Foxhall, president of the Memphis Cotton Oil Company, in reference to securing Foxhall's financial aid in the purchase of said property. Nothing definite was agreed on, but Foxhall stated that he would investigate the matter and communicate with Patten later. During the latter part of the month Foxhall bought the gin for the Memphis Cotton Oil Company, and the property was conveyed to said corporation. He informed Patten by letter of the negotiations, and later of its purchase by the oil company, stating in the letters that "We are depending on you to run the gin this season," and that "We would like to sell you an interest and have you run it," and finally urging Patten "to come on up as we will make deal with you, either to sell an interest or to run the plant for us." To these letters Patten replied, asking for a proposition from the oil company, and stating that the Brice Gin Company had offered him $150 per month to run the gin. As to purchasing an interest in the gin he said:

"As to buying an interest would not be able to make a decent payment. If you people could arrange to carry me we might make some kind of arrangements to pay you."

On August 1 the Memphis Cotton Oil Company replied to Patten's letter, saying:

"We would like very much to sell you a one-third interest in the plant for $2,200, payable in notes on reasonable time and you could draw reasonable salary by the year, * * * and wish you would wire us on receipt of this letter whether or not you will come up at once and go over everything on basis about as stated."

Patten went to Memphis soon after receipt of this letter, and Foxhall testifies that he, acting for the Memphis Cotton Oil Company, and Patten thereupon made an oral agreement, by the terms of which Patten was to buy a one-third interest in the gin for $2,200, for which he was to give his notes, and the net profits of such one-third interest in the gin were to be applied in payment thereof, and that the notes were only to be paid out of the profits in this way; that it was also agreed that Patten was to run the gin and receive a salary of $100 per month, payable out of the business; that Patten took charge of the gin in pursuance to this agreement about August 16, 1919, moved his family into the residence on the property, employed labor, and ordered machinery for repair of the gin, and began operating it; that payment of the expenses thus incurred was made by drafts drawn in the name of the Brice Gin Company, which the Memphis Cotton Oil Company paid, and charged to an account carried on its books with the Brice Gin Company.

Foxhall further testified that he had no specific authority from the board of directors of the oil company to buy or sell the Brice gin, but that the directors "always accepted what he did"; that after his verbal agreement with Patten he had prepared a resolution of the board of directors authorizing a sale to Patten. The Board of Directors consisted of five members. Foxhall, the

president, resided at Memphis, at which place was located the principal office of the company. Two of the directors, one being the secretary and the other the principal stockholder in the company, resided at Abilene, Tex. There was no regular meeting of the board of directors for the purpose of considering this matter. Foxhall sent the resolution to the secretary, and when it was approved by the secretary and the other director, who resided at Abilene, "that was considered a meeting of the board of directors," and the resolution was certified to by the president and secretary as having been passed at a regular meeting of the board of directors held in Memphis, Tex. A deed was then also prepared, dated September 29, 1919, by the terms of which the Oil Company conveyed to Patten, for the consideration of $2,200, a one-third interest in the Brice gin; this deed retained a vendor's lien to secure payment of the notes for $2,200; these notes were also prepared for execution by Patten, and were in the form of absolute obligations to pay. The deed was acknowledged by Foxhall, who testifies that he notified Patten over the phone that the papers were ready for execution and delivery, and that Patten answered that he would be in Memphis soon and close the matter up, and that the transaction was in this condition when Patten was killed on October 16, 1919. He further testified that after Patten's death he agreed with Mrs. Patten to cancel the trade and paid her $200 for her husband's services for the two months' work, and the papers were destroyed.

The only other evidence as to the agreement between the Memphis Cotton Oil Company and Patten was that of Mrs. Patten, who testified in part as follows:

"I know something about the particulars of Mr. Patten's employment by the Memphis Cotton Oil Company. At the time he was employed he was living in Stonewall county; that was done by letter and telegram. * * * I heard Mr. Foxhall talk to Mr. Patten with reference to the employment after we came out here. I heard Mr. Foxhall say that Mr. Patten was working for the company; he told me that before the accident. I didn't hear him state what salary my husband was to receive, and I know his salary was $100 a month. The Memphis Cotton Oil Company did pay a salary after his death. They paid $200 for two months' work. He was employed by the year at $1,200 per year. The gin out there was supposed to run the season. During the remaining part of the year Mr. Patten was to be employed at the Cotton Oil Company at Memphis. His employment was for 12 months in the year. I don't know what his duties were in the oil mill, but at Brice he was to manage and operate the gin. Running the gin stands constituted a part of his duty. He was running the stand at the time, I understand, he was hurt."

She further testified that her husband discussed all his business transactions with her, and she never heard him say he had a partnership interest in the gin, but he told her he was operating the gin for the Memphis Cotton Oil Company on a salary; that after her husband's death Foxhall asked her and her son and son-in-law whether they would want to take an interest in the gin "as he had offered it to Mr. Patten."

[1] We think it clear that, if deceased were a partner with the Memphis Cotton Oil Company at the time of his death, then he was not an employee of said company within the terms of the compensation law. Such law deals with "employers" and "employees," and defines the liability of the employer for personal injuries sustained by the employee in the course of his employment. A partnership has no legal entity in law. There would be no liability of a partnership to one of the partners who might be injured in the service of the partnership, even though he were being paid wages for his services, because he, as a member of the partnership, would be liable with the other members for the damage. He would be both employer and employee. The English courts have held that a similar law has no application to such a relationship, and at least one American case has followed these decisions. Cooper v. Industrial Commission, 171 Pac. 684. The Industrial Accident Boards of several of the states have come to the same conclusion. Honnold on Workmen's Compensation Laws, pp. 179, 180, and notes.

Notwithstanding the many decisions on the subject, it has been found to be a difficult matter to announce a satisfactory definition of partnership or to lay down tests that meet universal approval. See exhaustive notes on this subject, 18 L. R. A. (N. S.) p. 963 et seq. We shall not attempt an extended consideration of the authorities, but will refer to a few of the Texas cases on the subject. In the case of Buzard v. Bank, 67 Tex. 83, 2 S. W. 54, 60 Am. Rep. 7, it was held that an agreement to pay one employed to render certain services a per cent. of the profits of the undertaking, in lieu of a salary or wages, did not make him a partner. The recipient of such profits under the facts of that case had no interest in the business itself, his only interest being to secure a part of the profits as compensation for his services. We quote a few passages from the opinion of the court as indicating the trend of thought which led to the conclusion announced:

"Upon the question as to whether a participation in the net profits will necessarily constitute a partnership there is serious conflict, the great weight of the later decisions being in the negative; and it is generally conceded by the courts which hold the affirmative that, if the contract is expressly for a sum equal to a proportion of the profits, this does not of itself create the relation of partners.

"After a thorough discussion of the subject,

Mr. Storey thus states the law: 'Admitting, however, that a participation in the profits will ordinarily establish the existence of a partnership between the parties in favor of third persons, in the absence of all other opposing circumstances it remains to consider whether the rule ought to be regarded as any more than mere presumptive proof thereof, and, therefore, liable. to be repealed and overcome by other circumstances, and not of itself overcoming and controlling them. In other words, the question is whether the circumstances under which a participation in the profits exists may not qualify the presumption, and satisfactorily prove that the portion of the profits is taken, not in the character of a partner, but in the character of an agent as a mere compensation for labor and services. * * * If the participation in the profits can clearly be shown to be in the character of agent, then the presumption of partnership is repealed. In this way the law carries into effect the actual intention of the parties, and violates none of its own rules. It simply refuses to make a person a partner who is but an agent for a compensation payable out of the profits; and there is no hardship upon third persons; since the party does not hold himself out as more than an agent.' * * * In section 2, of chapter 6, of his work on Partnership, Mr. Parsons treats the question, * * * [and] near the conclusion in the text he says: 'It must be, however, considered as now settled that a person paid for services rendered to a firm by a share of the profits, if this be given him only as a compensation for service, and he has no interest in the principal, and no other interest in the profits, he is not liable as a partner.' * * * In the case before us Pennington was to receive one-half the profits of the business for his services. Buzard did not intend to make him a partner, but only an agent. Admitting that his understanding of the legal result of the contract would not change the law if the contract of itself had made Pennington a partner, still the circumstances attending the agreement show its purpose."

In the case of Kelley Island Line & Transport Co. v. Masterson, 100 Tex. 38, 93 S. W. 427, the following quotation from Goode v. McCartney, 10 Tex. 193, is approved as the law:

"If one person advances funds, and another furnishes his personal services and skill in carrying on the business and is to share in the profits, it amounts to a partnership. It would be a valid partnership, notwithstanding the whole capital was in the first instance advanced by one partner, if the other contributed his time and skill to the business, and although his proportion of gain and loss was to be very unequal. It is sufficient that his interest in the profits be not intended as a mere substitute for a commission, or in lieu of brokerage, and that he be received into the association as a merchant and not an agent."

The court in that case makes this further statement:

"Masterson was not to receive his share of the profits as compensation for the use of his money, nor were Downey and Kelley to receive their share as payment for services but each received the profits as fruits of the joint enterprise, that is as profits, which made them partners."

In the case of Freeman v. Hutting Sash & Door Co., 105 Tex. 560, 571, 153 S. W. 122, 125 (Ann. Cas. 1916E, 446), Chief Justice Phillips, in commenting on a set of facts which were held to create a partnership as to the appellant, said:

"There existed by his tacit agreement a community of interests, the common enterprise, its operation for the joint account, and a right in the owner of each interest to share as a principal in its profits as such, which under the established rule in this state is a recognized test of the relation."

A number of decisions by the Courts of Civil Appeals and one by the Commission of Appeals may be referred to as approving and applying the rules stated in the above cases: Roberts v. Nunn (Tex. Civ. App.) 169 S. W. 1089; Avery v. Llano Cotton Seed Oil Mill Association (Tex. Civ. App.) 196 S. W. 353 (2); Kuykendall v. Schell (Tex. Civ. App.) 224 S. W. 303 (1); Fink v. Brown (Tex. Com. App.) 215 S. W. 843; Roberts v. McKinney (Tex. Civ. App.) 187 S. W. 976; Steger v. Greer (Tex. Civ. App.) 228 S. W. 306 (1).

[2] Assuming for the present that the fact of the Cotton Oil Company being a corporation would have no effect on the question, a matter which we discuss later, if the agreement between the Cotton Oil Company and Patten was as testified to by Foxhall, and such agreement had been consummated by a delivery of the deed, which it was evidently contemplated should be delivered in consummation thereof, we think that a partnership would have resulted therefrom. The parties would thereupon have had a common interest in the capital itself, which adds greatly to the inference to be drawn from a community of interest in the profits. Bates on Partnership, § 31. Even if Patten's interest would not have thereby amounted to a legal title, he would have acquired some sort of an equitable interest therein, and would have been entitled to a voice in the management and control of the business, which would have been inconsistent with the holding that he was the mere agent of the Cotton Oil Company. The agreement that his share of the profits should be applied in payment of his interest in the business is not inconsistent with a conclusion that he was to receive these profits as a principal in the business, rather than as a mere agent or employee of the other party to the contract.

But the gin property was real estate, and title already vested in the Memphis Cotton Oil Company, and it would be a serious question as to whether Patten, by a mere oral partnership agreement, even though it be consummated by the parties actually

engaging in the business together, could thereby acquire an interest in such real estate. Some authorities indicate that he might. Marsh v. Davis, 33 Kan. 326, 6 Pac. 612. We have not considered the question exhaustively, and express no opinion thereon. As stated, it was evidently contemplated that a deed would be delivered, and we assume, for the purpose of the disposition of the case, that this was necessary for a full consummation of the agreement, and it becomes necessary to determine what would be the relation of the parties in the interim—that is, if it be true that Patten took charge of the business in pursuance to the agreement for the formation of the partnership, acting as if the conveyance had been made and assuming that it would be shortly executed and delivered.

[3] An executory contract to form a partnership does not create the relation of partners between the parties until it is consummated or executed. If the agreement provides a condition precedent to the formation of the partnership, then it will not come into existence until the condition has been met. The enterprise in which the parties are to engage must be launched under the agreement before the parties become partners. Buzard v. McAnulty, 77 Tex. 438, 14 S. W. 139; Eagle Drug Co. v. White (Tex. Civ. App.) 182 S. W. 385; 20 R. C. L. p. 811; Bates on Partnership, § 78 et seq.

[4] But the precedent condition may be waived, and, if the parties actually proceed with the business, intending to operate it as partners under the agreement, they may be held to be partners though something may remain to be done to fully complete their agreement.

"Inasmuch as acting together as partners may constitute a partnership though no written articles of agreement be entered into, so actually beginning the joint business or launching it together, although something remains to be done or conditions to be performed by one or all, will constitute an immediate partnership inter se and as to third persons." Bates on Partnership, § 86.

In the case of Gullich v. Alford, 61 Miss. 224, an oral agreement was made, by the terms of which Gullich, the owner of a mill, "located, or intended soon to be located, on his own land," was to sell a one-half interest to Alford, a machinist, who was to repair it, and the parties were to conduct a milling business therewith in partnership. It was agreed that the contract should be reduced to writing. The parties entered into the business and conducted it for some time, but were unable to agree upon the terms of the writing which they attempted to draw to express their agreement. Whereupon Alford withdrew and sued for the value of the services performed by him while the mill was in operation. The case was decided on the theory that—

Alford "was entitled to the writing as a part of his contract, and that its execution was a condition precedent to a consummation of the contract unless it had been waived by him."

It was held by the court that—

"If * * * the parties made the writing of the essence of their contract, and the appellee [Alford] did not receive possession of the property as in execution of the contract, it would seem that he had the right to abandon it on the willful failure and refusal of the appellant to comply with its terms. * * * Electing to abandon the contract of purchase he was entitled to recover the debt due to him from the appellant [Gullich] as well as compensation for the labor performed in repairing the engine, for if there was no sale of the engine this labor was done for the exclusive benefit of the appellant who is still the owner of the property repaired. But the court below, treated the agreement to form and carry on the partnership as a part of the contract of purchase, and inherent in and dependent on it, instructed the jury that unless the business conducted by the use of the machinery was carried in under a consummated contract of partnership the appellee might renounce his position as partner and recover a reasonable compensation for his labor contributed to the business. This was error. Though it may be true that the appellee would not have entered into the partnership but for his expectation of becoming a part owner of the machinery by which its business was prosecuted, it is nevertheless true that he did assume the attitude of partner. The services for which he sues were rendered by him, not to the appellant but to the firm."

This case is very closely in point under the case made by the appellant on Foxhall's testimony, and we think the evidence is sufficient to have warranted the finding that the parties entered into the business for which the partnership was formed, to wit, the operation of a cotton gin for profit, and that the partnership was actually launched, notwithstanding the deed of conveyance had not been delivered. At this point we may say, however, that we do not think that the evidence conclusively shows this to be the fact. There is sufficient conflict in the evidence to have required the submission of the issue to the jury. The evidence is consistent with a finding that the deceased was working for the Memphis Cotton Oil Company under a tentative agreement to acquire an interest in the business, to be concluded and settled by the execution of the necessary writings at such time as Foxhall had the necessary authority to act for the corporation, and that there was no intention to "launch the partnership" until such time. Under such a conclusion there would be no partnership. In addition to authorities already cited, see Martin v. Baird, 175 Pa. 540, 34 Atl. 812; Bates on Partnership, § 88; Gilmore on Partnership, § 16.

[5] It is necessary to consider in this connection one other matter; that is the effect

which the fact that one of the proposed partners was a corporation would have on the agreement, and the acts that were done under it. It is the law that a corporation, unless its charter authorizes it to do so, may not enter into a partnership. Sabine Tram Railway Co. v. Bancroft, 16 Tex. Civ. App. 170, 40 S. W. 839; Markowitz v. Greenwall Theatrical Co. (Tex. Civ. App.) 75 S. W. 77–79; 7 R. C. L. p. 607; 3 Thompson on Corporations, §§ 2336–2340. But, when the parties have entered into such relations, and done business as partners, the law regards the acts already performed practically in the same way as if there had been a real partnership, though they are not perhaps strictly speaking partners. Some of the authorities refer to them as "joint adventurers," and the liability arising from such relationship as that of persons engaged in a joint enterprise. It is said in one case that—

"While the partnership had no legal existence it had one in fact." Boyd v. American Carbon Black Co., 182 Pa. 206, 37 Atl. 937.

The rights of the parties engaged in such an enterprise and those dealing with them, as to past transactions, are settled on practically the same basis as if they had been partners. Breining v. Sparrow, 39 Ind. App. 455, 80 N. E. 37; Wilson v. Carter Oil Co., 46 W. Va. 469, 33 S. E. 249; Cleveland Paper Co. v. Courier Co., 67 Mich. 152, 34 N. W. 559; Kelly v. Biddle, 180 Mass. 147, 61 N. E. 821; Wallerstein v. Ervin, 112 Fed. 124, 50 C. C. A. 129; Thompson on Corporations, supra. It was said in the opinion in the case of Sabine Tram Co. v. Bancroft, 16 Tex. Civ. App. 170, 40 S. W. 839:

"While those parts of the contract which have been executed should be enforced between the parties, no enforcement of the unexecuted part of it can be properly demanded. Parish v. Wheeler, 22 N. Y. 494; Thomas v. Railroad Company [101 U. S. 82]."

In the case of Fink v. Brown (Tex. Civ. App.) 183 S. W. 46, liability of a corporation as a partner with an individual for acts done by the partner was sustained without question, and, while the case was reversed on opinion of the Commission of Appeals (215 S. W. 846), no question was raised as to nonliability of the corporation because of its inability to enter into the agreement which was alleged to create the relationship of partners. Of course the real question in this case was whether Patten was an employee. And we think that, if the parties were engaged in the business in the manner stated by the witness Foxhall, and would have been partners but for the fact that the corporation could not enter into a partnership agreement, the same facts that would have constituted them partners would, but for such limitation on the power of the corporation, have made Patten so jointly interested in the enterprise that he would not have been an employee

of the oil company. The case was tried on the theory that the resulting relationship would have been one of partnership. For practical purposes it would make no particular difference whether the relation would have been that of a partner, strictly speaking, or joint operators of the plant. And we think that, if there is any material error in the submission of the issue of partnership, of which appellant has properly complained, it would be entitled to a reversal of the case on such ground; and this brings us to the consideration of appellant's objection to the court's charge on partnership.

In connection with the submission of the issue of partnership the court charged the jury as follows:

"(b) A partnership is constituted where two or more persons enter into some lawful business or undertaking, with the understanding that they are to share the profits of such business or enterprise, in case there are profits growing out of the same, and to share the losses, if any there should be, growing out of their operation of said business or undertaking.

"(c) A partnership is to be distinguished from a mere joint ownership of property and from a contract of hiring, and, in this connection, should you find from the evidence that an agreement was made between the officers of the Memphis Cotton Oil Company and the deceased, W. H. Patten, that said Patten was to receive $100 per month for managing the Brice gin, and one-third of the profits of said gin, should there be profits, without any agreement to share the losses, should there be losses, such an agreement would be a contract of hiring and not of partnership."

The objection urged by the appellant to this part of the charge was in this language:

"Plaintiff objects to the definition of partnership and what is contained in paragraph (c) of said charge in connection with said definition, because the same is not the law, is confusing and misleading, and calculated to influence the jury to make an incorrect and improper answer to the special issues submitted to them by the court in connection with said charge."

The appellant requested, and the court gave, at its request, the following issue:

"Did Foxhall and W. H. Patten agree that said Patten was to have a one-third interest in the net profits realized from the operation of the Brice gin, after all expenses, including Patten's salary, were paid, and that said Patten was to bear one-third of the losses resulting from the operation of the gin?"

The jury answered this "No." The appellant also requested the following charge, which was refused:

"To constitute a partnership there must be a community of profits or a specific interest in the profits."

[6] A reference to the authorities already discussed is convincing, we think, that the above definition and charge given by the

court, as applied to the facts of this case, is not correct, and that part of the charge which made an agreement to share the losses a requisite to a partnership was particularly calculated to harm the appellant. It is true that many authorities might be cited to the effect that a partnership agreement must contemplate both the sharing of profits and losses in order to create the relation of partners between the parties thereto. 18 L. R. A. (N. S.) 992–998; Ann. Cas. 1913B, 1336. In many of the cases cited in support of this general statement holdings will be found to the effect that an agreement to share net profits necessarily includes a sharing of losses, as the losses are taken into account in arriving at the net profits. Such agreement, of course, provides for sharing of losses to a limited extent only. However this may be, the Texas authorities cited, we think, show that a charge, such as was given in this case, is not appropriate to the character of cases we are considering. It was expressly stated in the case of Cothran v. Marmaduke, 60 Tex. 372, that—

"It is not essential to constitute a partnership that the parties were by agreement to share in the losses, but it is sufficient if they are to have a community of interest in the profits as such."

To the same effect see Avery v. Llano Cotton Seed Oil Mill Association (Tex. Civ. App.) 196 S. W. 353 (2); Fink v. Brown (Tex. Com. App.) 215 S. W. 847; Bates on Partnership, § 56; Lindley on Partnership (Am. Ed.) p. 23.

[7] But we believe that the objection made to the charge at the time it was given, and the assignments presented here, do not entitle appellant to a reversal of the case on this point. The objection made to the charge was too general. The purpose of the law requiring all parties to make their objections to the charge in order to reserve them for consideration on appeal was to require that such objections be specific enough to inform the trial court of the particular error which the party claimed was made in the charge. Such general objections as were made in this instance convey no specific information whatever to the court, and to hold that such objections are sufficient would nullify the purpose of the law. P. & N. T. Ry. Co. v. Grundy (Tex. Civ. App.) 171 S. W. 318; Petty v. City of San Antonio (Tex. Civ. App.) 181 S. W. 224; T. & N. O. Ry. Co. v. Petersilka (Tex. Civ. App.) 176 S. W. 70; C., R. I. & G. Ry. Co. v. Comstock (Tex. Civ. App.) 189 S. W. 109; Keevil v. Ponsford (Tex. Civ. App.) 173 S. W. 518; Ochoa v. Edwards (Tex. Civ. App.) 189 S. W. 1022. But, if the general objection, taken in connection with the special charge requested, had been sufficient to call the court's attention to this error, we would be inclined to consider it. The special charge quoted above and refused is not strictly cor-

rect, though it would have some tendency to direct the mind of the court to the correct test of partnership to be applied in the circumstances of this case. But, at the same time, the appellant requested, and the court gave an issue calling for, a finding as to whether the agreement was to share losses. This requested issue invited the error committed by the court. So that, on the whole, we do not think that the record shows that the appellant in any manner specifically directed the mind of the trial court to the real vice, which we think is in the charge. In fact, it is not even now clearly presented in appellant's brief. Its proposition is:

"The court erred in its charge defining partnership and in overruling appellant's objections thereto"

—and its subproposition thereunder is:

"There was no evidence in the case that Foxhall and Patten had not agreed to share the losses; on the contrary, the agreement between them being to share the net profits, it resulted that they had agreed to share the losses. The charge of the court was argumentative, assumed a fact which was not in evidence, and contained the vice of influencing the jury to answer the issue as to partnership erroneously."

We therefore do not think that we should reverse the case on account of the error which we conceive to be in the charge.

Appellant urges also that—

"The trial court should have directed a verdict for the appellant for the additional reasons: (1) There was no proof that the appellant had a license from the commissioner of insurance and banking to write compensation insurance; (2) the evidence was insufficient to establish that the Memphis Cotton Oil Company was a subscriber; (3) there was no proof that the claimants for compensation had made claim for compensation as provided by the Texas Employers Liability Act."

[8] If the appellant was doing business without procuring the necessary license, it cannot take advantage of its own violation of the law. K. C. Life Insurance Co. v. Elmore (Tex. Civ. App.) 226 S. W. 709 (17). The evidence sufficiently shows that the Memphis Cotton Oil Company was a subscriber, holding a policy written by the appellant, insuring payment of compensation to its employees within the meaning of the law. As to the third ground, it appears that the Memphis Cotton Oil Company received notice of the accident immediately; that it immediately notified the appellant; that Mrs. Patten also notified appellant within about two weeks; that within about a month a representative of the appellant visited Mrs. Patten, and attempted to settle with her; that "notice" of some sort was filed with the Accident Board within a month and one-half or two months after the accident. The judgment of the Accident Board itself was ren-

dered on March 5, 1920, within less than six months after the accident, and recites that—

"After due notice to all parties at interest came on to be considered by the Industrial Accident Board the claim for compensation," etc.

[9, 10] While a copy of the claim as filed with the Board was not offered in evidence, all these circumstances are sufficient to show that such a claim was filed. American Indemnity Co. v. Zyloni (Tex. Civ. App.) 212 S. W. 183; Texas Employers' Ins. Ass'n v. Mummey (Tex. Civ. App.) 200 S. W. 251. It required the filing of such a claim to invoke the action of the board, and the board actually took action within the six-months period. Besides this, the board had the right to "waive the strict compliance with the foregoing limitations as to notice, and the filing the claim before the board." Article 5246—43, V. S. C. S. 1918 Supp.

This disposes of all propositions advanced by appellant for reversal, and we conclude that the judgment should be affirmed.