AMERICAN INDEMNITY CO. v. ZYLONI et al.   (No. 7551.)

(Court of Civil Appeals of Texas. Galveston. March 29, 1918. On Motion for Rehearing, March 21, 1919. Appellant's Motion for Rehearing Denied April 17, 1919.)

1. MASTER AND SERVANT ⊕⇒417(3⅝)—WORKMEN'S COMPENSATION ACT—BINDING FORCE OF ORDER OF ACCIDENT BOARD—RIGHT TO APPEAL.

A workmen's compensation insurer which voluntarily contested the claim of the deceased servant's brothers before the Industrial Accident Board was not bound by the board's final award, and has an appeal therefrom where the board did not direct payment of the award to the brothers or find them in fact beneficiaries, but merely fixed the amount due, and ordered payment to the "legal beneficiaries," and where there was no express agreement the parties should be bound by action of the board.

On Motion for Rehearing.

2. MASTER AND SERVANT ⊕⇒388—WORKMEN'S COMPENSATION ACT — BROTHERS AS "BENEFICIARIES."

The brothers of a deceased servant were "beneficiaries" within the meaning of Workmen's Compensation Act 1913 (Vernon's Sayles' Ann. Civ. St. 1914, art. 5246kk).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Beneficiary.]

3. MASTER AND SERVANT ⊕⇒398—WORKMEN'S COMPENSATION ACT—NOTICE OF INJURY AND CLAIM.

Brothers of deceased servant, his beneficiaries, through the attorney for the elder, *held* to have given the notice of injury and made the claim for compensation required by Workmen's Compensation Act 1913 (Vernon's Sayles' Ann. Civ. St. 1914, art. 5246ppp), though the first letter of the attorneys in relation to the matter was sent to the employer, and they were referred to the insurer, to which they wrote inclosing a copy of their first communication.

Appeal from District Court, Galveston County; Clay S. Briggs, Judge.

Suit by John Zyloni and another against the American Indemnity Company to recover compensation under the Workmen's Compensation Act. From judgment for plaintiffs, defendant appeals. Affirmed.

Terry, Cavin & Mills, of Galveston, for appellant.

Cole & Cole, of Houston, and McDonald & Wayman, of Galveston, for appellees.

GRAVES, J. This concededly correct statement of the nature and result of the suit is taken from appellant's brief:

"This suit was brought by John Zyloni and Kazmiers Zyloni, the brothers of Peter Zyloni. to recover for compensation alleged to be due

them under the Workmen's Compensation Act of Texas of 1913 (Acts 33d Leg. c. 179 [Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246h–5246zzzz]). The appellees were residents of Erie county, Pa. Peter Zyloni met his death while in the employ of James Stewart & Co., which was a 'subscriber' under the Compensation Act of 1913, and appellant was the 'association' writing the insurance guaranteeing the payment of the compensation to the representatives of the deceased employés of James Stewart & Co. Peter Zyloni received the injuries which resulted in his death while in the course of his employment with James Stewart & Co. The court below rendered judgment in favor of appellees against appellant for $801.36, being the amount of compensation which he found appellees were entitled to up to the date of the judgment, and provided by his judgment that it should be without prejudice to the right of appellees to sue for installments of compensation which might become due after the date of the judgment. From this judgment appellant has duly perfected its appeal."

By its first two assignments appellant attacks the trial court's conclusion of both fact and law that, having voluntarily contested this claim before the Industrial Accident Board, without indicating any intention not to abide by the board's final award, it was bound by and had no appeal therefrom.

[1] In the view we take of the case, there was neither res adjudicata in that board's action upon nor estoppel under its agreement preventing appellant from further contesting the question whether appellees were legal beneficiaries of their deceased brother, for two reasons: (1) The Industrial Accident Board did not direct payment of its award to the appellees, or find them in fact to be beneficiaries, but merely fixed the amount due, and ordered appellant to pay that sum to "the legal beneficiaries of Peter Zyloni, deceased," without naming them; (2) as found by the trial court, "there was no express agreement that the parties would be bound by the action of said board. Nothing was said by either party prior to said hearing as to whether they would or would not be bound by the decisión of such board. After the making of said award, defendant notified plaintiffs that it would not be bound by said award, whereupon plaintiffs filed suit."

We therefore think the trial court was not without authority to determine in this suit whether or not appellees were legal beneficiaries of Peter Zyloni, as it did do notwithstanding the conclusion complained of in these assignments, but that it erred in holding them to be such.

In other words, we sustain the contention of appellant, presented under its third, fourth, and fifth assignments, that appellees, being the brothers of the deceased employé, came within none of the classes entitled to receive benefits under the Compensation Law.

This conclusion determines the case, and renders wholly academic any further question as to whether or not they gave the notice of injury and made the claim for compensation required by that statute (article 5246ppp). It accordingly becomes unnecessary to pass upon assignments 6 to 10, inclusive, relating to that issue.

Appellees, with much force and ability, insist that, under our Compensation Law of 1913, the beneficiaries to whom the right of action survives are the heirs of the deceased under the statutes of descent and distribution (article 2461 et seq.), and they, being the sole heirs under these statutes in this instance, are entitled to the compensation awarded by the act. As a part of their discussion they have filed here copies of an able argument presented by some of their attorneys and others to the Supreme Court in the case of Vaughan et al. v. S. W. Ins. Co., now pending in that court upon writ of error to the Court of Civil Appeals for the Ninth District. See 206 S. W. 920. We have read it with much interest, but are yet unable, as we have heretofore been, to yield to the view it so persuasively presents.

This court, in the case of Cole v. Mallory Steamship Co., 197 S. W. 326, followed the prior holding of the Court of Civil Appeals for the Ninth District at Beaumont that the Compensation Law did not enlarge the beneficiaries named in the pre-existing death injury statute, and therefore, since the surviving husband, wife, children, and parents of the deceased were made sole beneficiaries under the latter, brothers could not be such under the former. The matter is fully discussed in the Cole case, and in the Vaughan Case (Vaughan et al. v. S. W. S. Ins. Co., 195 S. W. 261), which it follows, and in which the Supreme Court has granted a writ of error.

So far as we are advised, the two cases mentioned are the only ones in which the question has been directly decided by the appellate courts of Texas. In these circumstances while we refrain from extended further discussion if it here, recurrence is made to the case of Smith v. So. Surety Co., 193 S. W. 204, decided by this court prior to both the Vaughan and Cole Cases. In that case it was held that, by the terms of the Compensation Act, its benefits vest absolutely in the legal beneficiaries of the deceased immediately upon his death, and not in his estate; hence the administrator of his estate, having no interest in the fund, could not maintain an action to recover it. While the point now before us was not then involved, and although the term "heirs" was unintentionally used for "legal beneficiaries" which was later corrected in the Cole Case, the conclusion reached in the Smith Case that the fund created by the operation of the compensation statute vested at once upon the death of the insured, after the manner of other insurance, in his legal beneficiaries, is

likewise our continuing conception of the general purpose and effect of that legislation; and if that was the Legislature's purpose in so providing this new fund and terming it "compensation" to some particular class of persons then in mind for the loss of benefits they would otherwise have received from the deceased, there could not at the same time have been the intention to also make it a part of his estate and descendable as his other personal property. The one disposition excludes the other. Moreover, such an estate would not only be subject to administration, but would pass to the heirs of the deceased chargeable with his debts, whereas by the express terms of the Compensation Act creditors of the deceased employé cannot reach the money thereby provided, except in instances where there are no legal beneficiaries at all.

That this character of estate was created, however, seems to be the contention of appellees, and upon such foundation largely is built their argument that the statutes of descent and distribution must be looked to in determining who are the beneficiaries.

It may be that in a theoretical or philosophical sense the fund intended to be created by this new system was in a certain way regarded as belonging to the deceased, by considering part of his currently earned wages as being withheld until after his death, and then paid in installments for a fixed period; in other words, by applying practically to economic affairs the spirtual principle that, "though dead, his works live after him," and so indulging the fiction that he was still earning money.

We cannot think that either the purpose or effect of the Act. It seems to us, as to beneficiaries, the Compensation Law, subject only to the contingencies therein specified, was merely intended to take the place of our death injury statute, and that the benefits of the former were expressly created for the personal use and benefit of those named in the latter, just as, in the absence of the new system, would have passed the right under the death injury statute to damages resulting from negligence. Nor does the provision that the compensation "shall be distributed according to the law providing for the distribution of other property of the deceased" inveigh against this conclusion, we think, because that merely directs or explains what divided interest each of the beneficiaries shall have in the fund, thereby prescribing a method of apportioning it among members of a class otherwise designated.

But, if the view indicated be at all permissible, it is only theorizing as to the origin or economic basis of the compensation idea, as distinguished from liability resulting from negligence, and, cannot be so applied to the result and effect of what was actually enacted by our statute on the subject as to defeat the evident purpose of its direct and plain provisions; that is, to compensate those expressly designated for loss resulting to them from the employe's death. It follows that, in our view, the judgment below was fundamentally erroneous in decreeing that brothers might recover the benefits in question, and must accordingly be reversed and here rendered for appellant, and that order has been entered.

Reversed and rendered.

### On Motion for Rehearing.

[2] Under a holding that brothers were not beneficiaries within the meaning of the Workmen's Compensation Act of 1913 (Vernon's Sayles' Statutes, art. 5246kk), this cause was originally reversed and rendered in appellant's favor. The question having in the meantime reached the Supreme Court, in the case of Vaughan et al. v. S. W. S. Ins. Co., action upon the motion for rehearing filed by appellees was postponed to await a disposition of the Vaughan Case. That has since been made; the Supreme Court, in an opinion rendered December 11, 1918 (206 S. W. 920), having decided the matter adversely to our view. Accordingly, in recognition of superior authority, it is now held that the appellees did come within the terms of the statute referred to.

[3] The further question of whether or not they gave the notice of injury and made the claim for compensation required by article 5246ppp of the same act was not passed upon before, because rendered immaterial by the conclusion that they could not in any event become beneficiaries.

Now, however, that matter must be determined. The insistence that no such notice was given nor claim made is presented under assignments 6 to 10, inclusive, of appellant's brief. After careful consideration of them, we conclude that they cannot prevail, and that the trial court did not err in holding the letter of September 8, 1915, from Brooks and English to James Stewart & Co. to be a sufficient notice and claim under the provisions of the last-mentioned section of the act—that is, article 5246ppp—which requires the notice to be given as soon as practicable after the injury, and the claim for compensation to be made within six months after the death of the employé. The undisputed facts about and following the letter are reflected in these findings of the court:

"Claim for compensation was made upon James Stewart & Co., the subscriber, within six months after the death of Peter Zyloni, as required by the Compensation Act of Texas, said claim being embodied in a letter dated September 8, 1915, written by Messrs. Brooks & English, attorneys at law, of Erie, Pa., a copy of which is as follows:

"'September 8, 1915.

"'James Stewart & Co., Care S. A. R. Ry. Company, Galveston, Texas—Gentlemen: On March 26, 1915, at about 9:30 a. m., as we are

informed, P. Zyloni, or Pete Zeurloines, while in your employ was killed, his neck being broken by the falling upon him of a gin pole. From the evidence which has been furnished us and as offered at the coroner's inquest, this appears to be a case of liability on your part. A friend of the deceased, who is familiar with the facts in the case, is very anxious to have the brother, who resides in Erie, put his case in the hands of an attorney in Galveston. Realizing that perhaps you have an insurance company we are writing to ascertain whether you or the company desire to adjust this matter without litigation, and if so, to give you an opportunity to do it through us as attorneys for the estate of the deceased.

" 'Unless we hear from you, or some one representing you within ten days, we take it for granted you do not care to negotiate.

" 'Yours very truly.'

"On September 14, 1915, the said subscriber, James Stewart & Co., wrote the said Brooks & English, acknowledging receipt of their letter of September 8th. On September 27, 1915, Brooks & English wrote a letter to the American Indemnity Company reading as follows: 'On September 8th. we wrote a letter to James Stewart & Co., a copy of which is inclosed, and they have referred us to you for adjustment of same.'

"This letter was received by the American Indemnity Company on September 30, 1915. On September 30, 1915, defendant wrote and mailed to Brooks & English (and which they received) a letter, a copy of which is as follows:

" 'Galveston, Texas, September 30, 1915.

" 'Messrs. Brooks & English, Attorneys at Law, Erie, Pennsylvania—Gentlemen: Re LC-3210 Peter Zyloni v. James Stewart & Co. We have for acknowledgment your favor of the 27th inst., transmitting copy of letter of the 8th instant, addressed to Messrs. James Stewart & Co., at Galveston, concerning the injury and death of the above party. You are correct in your statement that Zyloni was killed while in the employ of James Stewart & Co., but we do not believe you are correct in your belief that there is liability on the part of our policy holder.

" 'Under the provisions of our policy and the law under which it was written we are agreeable to handling the claim with you, but before giving you any definite advices, we will request that you kindly advise us if there are any other surviving relatives than the brother to whom you refer. At the time of the death an effort was made to get in touch with this party's brother, who was then in Shenandoah, Pa.

" 'If you can consistently do so, please let us have the desired information and upon receipt of same we shall be glad to write you further.

" 'Very truly yours,

" 'J. H. Booth, Claims Superintendent.'

"On October 11, 1915, Brooks & English replied to such letter of defendant, giving the information requested by defendant as to identity of relatives of Peter Zyloni, reading as follows: 'Replying to your letter of the 30th ultimo, will say that the only relative of Cassmer Zyloni, whom we represent, is a brother John Zyloni, living at Scranton, Pennsylvania. My client, however, is the older one and would be entitled to take out letters of administration, but if a satisfactory settlement with these two brothers could be agreed upon their release would be sufficient.'

"On October 14, 1915, defendant acknowledged receipt of the Brooks & English letter of the 11th inst., thanking them for the information contained therein, and for the first time declining to entertain any claim on account of the death of Peter Zyloni, asserting that Zyloni was killed March 26, 1915, and that no person had made claim for compensation as provided by the Texas Employers' Liability Act within six months after the date of death, and asserting that any claim was now barred."

The main assault upon the sufficiency of this letter as constituting compliance with the statute lies in the contention that, since it was neither sent nor presented to appellant direct, and nowhere in its body purported to claim compensation, it could not be construed to be such, nor would it as notice inure to the benefit of appellees, because it did not emanate immediately from themselves. Neither objection is thought to be tenable.

Under the authorities generally, so far as we are advised, a claim for compensation does not have to be preferred in any particularly set or formal manner. It is said in Glass Workmen's Compensation, subd. E, p. 85:

" 'Claim for compensation' means, not the institution of proceedings before the tribunal by which the compensation is to be assessed, but a notice of claim of compensation sent to the workman's employer. The claim need not be for a definite sum nor in writing. A request for arbitration is a sufficient 'claim for compensation,' and a letter containing a notice of the accident and a description of the injuries and a request to know what compensation would be allowed, and a further request for an immediate answer, is a claim for compensation. So a document wherein a workman made a claim for compensation for an injury received upon a designated day, 'as per claim in the Employer's Liability Act,' is a valid claim."

See 1 Honnold's Workmen's Compensation, § 212, pp. 762, 763.

As to the matter of notice, the undisputed facts here showed not only that both the employer and the insurer knew of the employé's death within two days thereafter, but that the insurer gave notice thereof to his relatives. In those circumstances, it would seem foolish, or at least a useless thing, to nevertheless require a further and direct notice of that same occurrence from his beneficiaries to the insurer before they could be said to be in position to claim the compensation provided. We do not think this statute should be so construed, concluding rather that notice from attorneys in the manner shown in the Brooks & English letter would be sufficient.

We do not find it necessary to determine

the question of whether the finding of the Industrial Accident Board was res adjudicata of the whole controversy, and do not do so, because the trial court independently found all the facts, which are not as such anywhere attacked, entitling appellees to the judgment obtained, as follows:

"Apart, however, from said decision and award of said board and independent thereof, I find that the plaintiffs are entitled as the legal beneficiaries of said Peter Zyloni, deceased, to have and recover of and from the defendant said compensation for the death of said Peter Zyloni the sum of $7.20 per week, the same being 60 per cent. of the average weekly wage of the said Peter Zyloni, for the full period of 360 weeks from and after March 26, 1915, such compensation being payable in the sum of $756 principal and $45.36 interest, making in all $801.36, being the total weekly compensation which has accrued up to this time, and the further compensation, hereafter to be payable each week, at the rate of $7.20 per week until the expiration of the full period of 360 weeks from and after March 26, 1915."

Since, therefore, this recovery may rest upon the separate determination of the necessary facts by the court below, it becomes unnecessary to decide whether or not that court was under the duty of doing what the record thus affirmatively shows it did do, that is, of accepting as final and binding the conclusions of the Accident Board, without itself going into these fact issues. This deduction applies with like effect to the court's other and antecedent conclusion that appellees were in fact the legal beneficiaries of their deceased brother, that matter also having been in the quoted findings disposed of independently of the Board's action; so that, even if the Accident Board had specifically adjudged appellees to be the legal beneficiaries, which our original opinion shows was not done, there would still be no necessity of a holding upon the question of whether or not its decree in that respect was res adjudicata. If any expressions in our former opinion may be taken as indicating a contrary view, they are accordingly now so modified as to accord with the conclusion here stated.

The motion for rehearing is granted, our former judgment set aside, and that of the court below is in all things affirmed.

Motion for rehearing granted, and trial court's judgment affirmed.