**GEORGIA CASUALTY CO. v. LITTLE.**
**(No. 6920.)**

(Court of Civil Appeals of Texas. Austin. Feb. 17, 1926.)

**1. Master and servant ⊜⇒405(4).**

Evidence *held* to sustain finding that death from diabetes, developing several weeks after workman's injury, was caused by injury.

**2. Evidence ⊜⇒544—Physician who treated injured employee need not have seen him at time of death in order to testify to its cause.**

Physician who treated injured employee and diagnosed his case as diabetes was not required to see him at time of his death or immediately prior thereto in order to testify as to cause of his death.

**3. Master and servant ⊜⇒405(1).**

Finding in compensation case must be sustained by competent evidence showing with reasonable certainty cause for which defendant is liable.

**4. Master and servant ⊜⇒348.**

Workmen's Compensation Act (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246h–5246zzzz), will be liberally interpreted.

**5. Master and servant ⊜⇒418(6).**

Judgment for compensation, supported by any evidence of probative force, will not be disturbed by appellate court.

**6. Master and servant ⊜⇒405(5).**

Evidence *held* sufficient to show that claimant of compensation for death of employee was his wife.

**7. Master and servant ⊜⇒405(5)—Employer's report of accident held not conclusive, on one claiming to be deceased's wife, that deceased was widower.**

In action to se aside compensation award, employer's report to Industrial Accident Board, made while deceased was unconscious, stating that he was a widower, and admitted in evidence for sole purpose of showing compliance with statute in making report in time prescribed. *held* not conclusive, on one claiming to be deceased's wife, that deceased was widower.

**8. Master and servant ⊜⇒386(4) — Judgment for lump sum compensation for death will be sustained, in absence of abuse of discretion.**

In compensation cases, whether lump sum payment for death of employee is authorized is largely within trial court's discretion, and in absence of abuse thereof judgment will be sustained.

**9. Master and servant ⊜⇒386(4).**

Insurer cannot complain of lump sum settlement for employee's death, where proper discount reducing future payments to present value is made.

**10. Master and servant ⊜⇒398—Finding of meritorious case, with good cause for delay of 17 days beyond 6-month period allowed for filing claim for compensation for death, held not abuse of discretion (Workmen's Compensation Act, pt. 2, § 4a, as amended by Acts 35th Leg. [1917] c. 103, pt. 2, § 4a [Vernon's Ann. Civ. St. Supp. 1918, art. 5246—43]).**

That widow was not informed of husband's death for some time thereafter and did not learn circumstances, or that he was insured for several months, whereupon she consulted attorney, who took diligent steps to investigate, finding that delay of 17 days beyond 6-month period after death for filing claim with Industrial Accident Board under Workmen's Compensation Act, pt. 2, § 4a, as amended by Acts 35th Leg. (1917) c. 103, pt. 2, § 4a (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—43) was for good cause and case was meritorious, *held* not abuse of discretion.

**11. Master and servant ⊜⇒398.**

Whether compensation claim is meritorious and good cause shown for failure to file notice within 6 months under Workmen's Compensation Act, pt. 2, § 4a, as amended by Acts 35th Leg. (1917), c. 103, pt. 2, § 4a (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—43) is within sound discretion of board.

Appeal from District Court, Navarro County; Hawkins Scarborough, Judge.

Suit by the Georgia Casualty Company against Catherine Little to set aside an

⊜⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

award of the Industrial Accident Board for the death of her husband, Manuel Brown. Judgment for defendant, and plaintiff appeals. Affirmed.

H. T. Cooper, of Fort Worth, and Thomas, Frank, Milam & Touchstone, of Dallas, for appellant.

W. H. Jack and Wm. Harry Jack, Jr., both of Corsicana, for appellee.

BAUGH, J. The Georgia Casualty Company brought this suit in the district court of Navarro county, Tex., to set aside an award of the Industrial Accident Board against it in favor of Catherine Little for the death of her husband, Manuel (or Emanuel) Brown, resulting from injuries sustained by him while in the employ of J. E. Metcalf & Son, contractors, of Corsicana, Tex. The case was tried to the court without a jury. The trial court sustained the award for $3,587.55, one-third of which was awarded to her attorneys. From this judgment the casualty company has appealed.

Appellant has abandoned all but 4 of its 45 assignments of error. The first of those relied upon here is that the evidence is insufficient to show that the injuries received by Manuel Brown while employed by Metcalf & Son were the proximate cause of his death.

[1] Brown was employed by Metcalf & Son as a cement mixer on construction work. He was protected by the policy at the time of his injury. Appellant's physician rated him as totally disabled, and appellant paid him full compensation in the sum of $12.11 per week, he remaining under the treatment of the casualty company's physician. Several weeks after the injury he developed a case of diabetes, and died some eight months after the injury, his total disability continuing up to his death, during all of which time he was continuously paid weekly compensation by appellant. As to the causes of his death, Dr. Burnett, who was appellant's physician and on whose diagnosis appellant relied in paying compensation while Brown lived, and who was employed by appellant to treat him, testified, amongst other things, as follows:

"I think the injuries caused his death, indirectly. We have what we call traumatic diabetes, and that is what I think caused his death —traumatic diabetes. In the first place, I found a small scar behind his right ear, and his right clavicle was broken. He was never up, able to work, after he was injured. The injuries I found him suffering from and treated him for would, in some cases, cause the condition that I have described, and in some cases it would not. I did not know this negro before he was hurt; I never discovered any signs of prior injury or prior disease; I had never seen him before. His unconsciousness was caused by a concussion. He got well of some of those injuries. He probably recovered to some extent from the concussion; he could talk, you might say, in a normal condition, but he was never able to work or do anything after that.

"Diabetes is a condition that is caused by the spleen. What causes it I do not know, and nobody else knows. I mean the pancreas, and not the spleen. You can have a case of traumatic diabetes. Usually an injury to the fourth ventricle of the brain may cause traumatic diabetes. I do not know how long a person can live with diabetes; some live a long life, very much longer than others. It can exist for a number of years without causing death. I do not know how long Emanuel Brown suffered from diabetes, but have an idea; I can't swear to it. With the symptoms he evidenced I do not think I could be mistaken about that.

"I first examined his urine when he complained of it acting too freely; I don't know how many months this was after the injury, but it was some time after; I then determined that he had diabetes for the first time. Up to this time I had not examined him for diabetes. I did not examine him for that because I did not find any evidence of it. I do not think he could have had excessive discharges of urine long before he complained of it; he told me when he was first taken, and that was the first time he had noticed it, and he had not had that excessive flow before that time, was the reason I had not examined his urine. He could have had diabetes without the excessive flow of urine. He could have had diabetes long before he was injured, but I do not think so; I don't know anything about that.

"After this man was injured he was unconscious for four or five weeks and semiconscious for several weeks afterwards, and it must have been about two months, or something like that, before I discovered that he had diabetes. I did not discover anything of that kind at first. I said, on my direct examination, that an injury of that kind might produce that kind of diabetes. As to discovering this traumatic diabetes, he came in one of those mornings and told me he was passing too much water, a slop bucket full, and I told him to come in and let me see some of it, and when I got it analyzed I saw great quantities of sugar. I asked him if he had ever suffered that way before, and he said he had not. A wound on the head, or a lick on the head, would, in my opinion, have caused the unconsciousness of the patient, and concussion can be caused even when the skin is not broken. Traumatic diabetes can be produced only by an injury to the brain—did not say only by concussion; a certain part of the brain must be affected, the fourth ventricle. He received no other injury that might have caused his death except traumatic diabetes. I think he did not, because he had gotten over his concussion."

[2] It may be conceded that this testimony was not as positive and emphatic as it might have been as to what caused the death of Manuel Brown. But, taking it as a whole in connection with other undisputed facts and circumstances, we think it reflects and expresses the professional opinion of appellant's own physician that the injury received by Brown, while under the protection of the compensation policy, was the cause of his death. It was not denied that Brown was strong, robust, and healthy before the injury; that he was totally disabled by the in-

·jury, which total disability continued and was recognized by and compensated by appellant up to his death; that diabetes developed after his injury, which, in the opinion of Dr. Burnett, was caused by the injury, and which caused his death. Under the facts and circumstances of this case, it was not necessary that Dr. Burnett should have seen Brown at the time of his death or immediately prior thereto in order to testify as to the ·cause of his death.

‹ [3] We have carefully considered all the authorities cited by appellant on this issue, but deem it unnecessary to discuss them here. All of them are suits for damages in negligence cases, and most, if not all, were sharply contested. We make no dissent from the rules announced therein to the effect that a finding. based on mere conjecture cannot stand, but that same must be sustained by competent evidence calculated to show with reasonable certainty a cause for which the defendant is liable. In the instant case the court found against the appellant, who introduced no evidence whatever. The only issue here is, Was there any evidence, in legal contemplation, to sustain that finding?

[4, 5] No such strict construction of the term "proximate cause" as used in the law of negligence, can be applied to compensation cases under our compensation statute (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246h–5246zzzz). Travelers' Ins. Co. v. Smith (Tex. Civ. App.) 266 S. W. 576. The courts have uniformly made a liberal interpretation and application of the Compensation Act so as to effectuate its purposes. Texas Employers' Ins. Ass'n v. Jimenez (Tex. Civ. App.) 267 S. W. 753; Employers' Liability Ass'n Corp. v. Light (Tex. Civ. App.) 275 S. W. 685. And where the evidence has any probative force in support of the judgment we are not at liberty to disturb it. Ins. Ass'n·v. Jimenez, supra; Wade v. Madison (Tex. Civ. App.) 206 S. W. 118. Numerous compensation cases have been before the appellate courts of the state in recent years in which the question of the sufficiency of the evidence to sustain the verdict was raised. We refer without comment to the following cases, wherein the quantum of proof was in most of them no greater than in the instant case, and which were sustained on appeal. Travelers' Ins. Co. v. Smith, supra; Ins. Ass'n v. Jimenez, supra; Millers' Indemnity Underwriters v. Schrieber (Tex. Civ. App.) 240 S. W. 963; Same Co. v. Heller, 253 S. ·W. 853; Consolidated Underwriters v. Free (Tex. Civ. App.) 253 S. W. 941; Texas Employers' Ins. Ass'n v. Herring (Tex. Civ. App.) 269 S. W. 249; Texas Employers' Ins. Ass'n v. Shipley (Tex. Civ. App.) 260 S. W. ·646.

[6] Appellant's second contention is that the evidence was insufficient to show that appellee was the wife of Manuel Brown. We ·cannot sustain this contention. The deceased negro appears to have been called both Manuel and Emanuel. He was unable to read or write. Appellee was married to Manuel Brown on August 14, 1920, at Rosser, in Kaufman county, Tex. Her own testimony as to what occurred thereafter was, in part, as follows:

"After I married Brown, we lived together at Rosser. Some time after we were married and lived at Rosser Emanuel Brown and I left there and came over this way, went to Bristol first, in Ellis county; he went to Bristol to work; from Bristol he went to Palmer and Ferris; then he told me he was going to Corsicana after he left Ferris; that's what he told me. I received word from him just before he came to Corsicana; he came over there just before. I do not know where Emanuel Brown died; they told me. I never did receive any notice directly from any party in Corsicana that my husband was about to die or had died. I know· Rufus English; and Nora English, his wife, I do not know. During the time my husband was injured and while he was injured and before he died, Rufus English told me, my husband told him I lived at Rosser."

There also appears in the record two letters from Manuel to appellee, written by some one for him, one from Bristol, dated May 1, 1921, and another from Crisp, dated May 17, 1921, urging her to come to him. He was injured in November, 1921. In her testimony Catherine sometimes called him Manuel and sometimes Emanuel. So did his employer. In the absence of any contradictory evidence, we think this identity of names, especially coupled with the other evidence and the surrounding circumstances, sufficient to sustain the trial court's finding that Catherine was the wife of Manuel Brown. The rule announced in Jester v. Steiner, 25 S. W. 411, 86 Tex. 419, is as follows:

"Similarity of name is, held to be sufficient to establish identity of the person, when there is no evidence to the contrary, and no suspicion cast upon the transaction by the evidence; but in case the identity is controverted, then similarity of name alone is not sufficient to establish such identity. Robertson v. Du Bose, 76 Tex. 1 [13 S. W. 300]."

See, also, Blunt v. Houston Oil Co. (Tex. Civ. App.) 146 S. W. 251; 22 C. J. 92.

[7] Appellant introduced no evidence. It insists, however, that the recitals of Metcalf & Son's report to the Industrial Accident Board, introduced by appellee, controvert such presumption. This report contained the following recitals: "(1) Name of injured employé, Emanuel Brown. (2) Address, Corsicana, Texas. (3) Sex, male. (4) Age, 50 years. (5) Single, married, widowed, or divorced, widower." We do not deem this any contradiction of the evidence offered. This report was made by Metcalf & Son on December 2, 1921, when Brown was admittedly unconscious. It was introduced by appellee, and so limited, for the sole and only purpose of showing a compliance with the

statute in making such a report within the time prescribed by law. The court's qualification of appellant's bill of exception so states.

[8, 9] Appellant's third contention is that the evidence is insufficient to authorize a lump sum judgment against it. On this point we quote the findings of fact of the trial court in part as follows:

"I find that Catherine Little, formerly Catherine Brown, is a woman nearly 50 years of age; that she owns no property, except equity in a very small and shabby negro cabin in the little town of Rosser, on which she owes a considerable sum; that she has no way of making a living with the exception of her own labor; that her present husband, Isaac Little, is suffering from disease and injuries contracted and received in army service during the war, and is receiving no compensation from the government; that the husband is unable to earn enough money to support himself and wife; that Catherine is also rearing and caring for a grandchild, now ten years old, which child is wholly dependent on her for support and education; that the award of $12.11, if payable weekly, after deducting one-third for attorney's fees, would give Catherine only about $32 per month for supporting herself, her grandchild, and also, in great part, supporting and caring for her present invalid husband; that Catherine is now past the middle of life, and her earning capacity is decreasing; that considering her other expenses, such weekly payments would not enable her to pay out her home, or to improve it; and I find that the facts make out a special case where manifest hardship and injustice would result if a lump sum award is not given."

These findings are substantially sustained by the evidence. The question of a lump sum payment is a matter addressed largely to the discretion of the trial court, and in the absence of abuse of such discretion his judgment should be sustained. Texas Employers' Ins. Ass'n v. Boudreaux (Tex. Civ. App.) 238 S. W. 697; Texas Employers' Ins. Ass'n v. Downing (Tex. Civ. App.) 218 S. W. 112. In any event, where a proper discount, reducing future payments to a present value, is made by the trial court, the insurance company is not injured, and should only be heard to complain that proper discount had not been made. Consolidated Underwriters v. Saxon, 265 S. W. 143. The Saxon Case contains a full discussion of this question by Judge Hamilton, of the Commission of Appeals. The court made proper discount in the instant case, and no complaint is made as to that. See, also, Travelers' Ins. Ass'n v. Smith, supra, and Texas Employers' Ins. Ass'n v. Herring, supra, on lump sum awards.

[10, 11] Appellant's last proposition is that appellee failed to bring herself within the amendment of the statute requiring notice of claim to be made to the Industrial Accident Board, within six months after death of Manuel Brown. See article 5246—43, Vernon's Ann. Civ. St. Supp. 1918; Act of March 28, 1917, c. 103, pt. 2, § 4a. This amendment provides as follows:

"Provided that for good cause the board may, in meritorious cases, waive the strict compliance with the foregoing limitations as to notice, and the filing the claim before the board."

In the instant case the claim was filed 6 months and 17 days after Brown's death. Both the Industrial Accident Board and the trial court found this to be a meritorious case, and that good cause had been shown for waiver of a strict compliance. Necessarily the Legislature could not define the terms "meritorious cases" and "good cause." These are matters which must be left to the good judgment and sound discretion of the board and of the trial court under the facts of each particular case. And in passing upon them, as with other provisions of the Compensation Law, a liberal construction and application should be made. Consolidated Underwriters v. Seale (Tex. Civ. App.) 237 S. W. 642.

In the case at bar one Dora English, who claimed to be a cousin of Manuel Brown, and with whom it appears he stayed after his injury, had made a claim for compensation in her own behalf within the time prescribed by law. Appellee contends that this claim inured, under the language of the statute, to all beneficiaries, and was in itself sufficient compliance, on behalf of appellee, with the provisions of the law of notice, citing American Indemnity Co. v. Zyloni (Tex. Civ. App.) 212 S. W. 183, and Johnson et al. v. Mining Co., 266 S. W. 635, 205 Ky. 752. We have concluded, however, that the circumstances warranted the board in waiving a strict compliance with the notice statute in this case, and it becomes unnecessary for us to pass on this contention of appellee.

Manuel and Catherine were typical ignorant negroes, who did only manual labor. After their marriage Manuel left home in search of work, going from place to place as employment opened to him. The court found that they had never separated. Manuel could neither read nor write, and appears to have been one of those shifting, improvident characters frequently met with in his race. After his injury he was unconscious for some time and helpless to the time of his death. He stayed with Rufus and Dora English, who knew where Catherine lived but failed to notify her. She did not know of his death until about a month after it occurred. Nor did she know whom he was working for, what sort of work he was doing, or that he was insured. She first learned of it in December, after his death in August, and immediately took it up with an attorney at Corsicana. Her attorney, with but meagre information, investigated the matter diligently, and finally ascertained the facts and filed her claim immediately thereafter, on February 8, 1923. In view of these facts and circumstances,

we are not prepared to disturb the holding of the board and of the trial court that good cause was shown for the delay of 17 days over the 6-month period allowed by law for filing such claims.

Finding no error in the record, the judgment of the trial court is affirmed.

Affirmed.