AMERICAN MUT. LIABILITY INS. CO. et al. v. THOMAS.

No. 9489.

Court of Civil Appeals of Texas. Galveston.

Jan. 15, 1931.

Rehearing Denied Feb. 5, 1931.

Oliver Thomas, who was the son of Saul Thomas, was entitled to the benefits of the Employers' Liability Act at the time of his death, which occurred on the 1st day of January, 1929, while he was engaged in the course of his employment.

After the death of Oliver Thomas, one Myrtle Kirtman, claiming to be the common-law wife of the deceased, gave notice of his death in time and manner as required by law, and on the 16th day of January, 1929, filed with the Industrial Accident Board a claim for the death of Oliver Thomas, and the insurance company began to pay her compensation at the rate of $13.85 per week.

Thereafter, on May 4, 1929, Saul Thomas, father of the deceased, Oliver Thomas, intervened in the claim demand of Myrtle Kirtman pending before the Industrial Accident Board and filed his claim for compensation for the death of his son with said board. He contested before the board the payment of the compensation demanded by Myrtle Kirtman.

On the 17th day of June, 1929, the board entered its final order and award in favor of Myrtle Kirtman, upon its finding that she was the common-law wife of Oliver Thomas at the time of his death. Thereafter Saul Thomas, in due time and manner, gave notice of his dissatisfaction with the award of the Industrial Accident Board and in due time filed this suit in the district court of Galveston county, attaching to his petition a copy of the award of the board in favor of Myrtle Kirtman against the insurance company, making the insurance company and Myrtle Kirtman and her attorneys, Howell & Howell, parties defendant.

The plaintiff alleged that he had employed attorneys Henry O'Dell, George Prendergast, and Charles E. Fernandez to institute his suit and had agreed to pay them for their services one-third of any sum he might recover in the cause. He alleged that at the time Oliver Thomas died he was earning a weekly wage of $23.08. He prayed that the award of the board be set aside and that he have judgment against the insurance company for the sum of $13.85 per week for a period of 360 weeks, beginning on the 1st day of January, 1929, for interest, and costs of suit, and that one-third of such award be adjudged to his said attorneys.

Baker, Botts, Parker & Garwood, and John P. Bullington, all of Houston, for appellant Insurance Company.

Howell & Howell, of Beaumont, for appellant Myrtle Kirtman Thomas.

George P. Prendergast and Henry O'Dell, both of Galveston, and Charles E. Fernandez, of Franklin, La., for appellee.

LANE, J.

One Oliver Thomas, now deceased, was on and for some time prior to the 1st day of January, 1929, in the employ of Young & Suderman, Inc., a subscriber as that term is used in the Employers' Liability Act of the State of Texas.

The American Mutual Liability Insurance Company, hereinafter, for convenience, called the insurance company, was the insurer for Young & Suderman under said act.

The insurance company, which had also given due notice of its dissatisfaction with the award made by the Industrial Accident Board and which had been made a party defendant in this suit, filed its answer and cross-bill. It demurred generally to the allegations of the plaintiff, made general denial, and in the alternative it alleged that if Oliver Thomas did die as a result of injuries as al-

leged by the plaintiff and it is liable to the beneficiaries of the deceased under the terms of the Workmen's Compensation Act of Texas, then in that event it offers to pay any amount for which it may be so liable to the person or persons entitled to the same; that by reason of the uncertainty as to whom such compensation should be paid, it should not be charged with any portion of the cost incurred in this suit. It prayed that the award of the Accident Board be set aside and that it have judgment for costs of court and such further relief to which it may be entitled both in law and equity.

Defendant Myrtle Kirtman filed her answer and cross-action. She demurred generally to the allegations of the plaintiff's petition, specially excepted to so much of the plaintiff's petition as alleged that she was guilty of fraud which prevented plaintiff from sooner giving the notice of the death of Oliver Thomas and from presenting his claim to the Accident Board, because such allegations were irrelevant and immaterial and have no bearing upon the issues involved and are prejudicial to the rights of defendant. She denied the allegations of the plaintiff's petition.

Becoming actor, she complains against the plaintiff, his attorneys, and the insurance company. She alleges the death of Oliver Thomas; his employment by Young & Suderman, a subscriber; the issuance of the policy by the insurance company; that she was the common-law wife of Oliver Thomas at the time of his death, and is entitled to compensation as the sole beneficiary by reason of the death of Oliver Thomas; that at the time of the death of the deceased his weekly wage was $24, and that under the provisions of the Workmen's Compensation Act she was entitled to a recovery from the insurance company of the sum of $13.85 per week for 360 weeks from the date of the death of the deceased; that in the event she is mistaken with reference to the term of the deceased's employment, then she says that $4 per day was the usual wage paid others who were similarly employed as was the deceased by the same or similar employers; that the insurance company paid her compensation at the rate of $13.85 per week for a period of 16 weeks and then failed and refused to pay her any further sum; that upon such refusal she filed her claim with the Accident Board, and upon a hearing by such board it made an award in her favor; she alleged reasons why she should receive a lump sum settlement.

By supplemental petition, plaintiff alleged that Oliver Thomas was his son by his first wife, Georgiana, who was at the time of the death of said son also dead; that Oliver was the only child of himself and his deceased wife; that Oliver Thomas from time to time prior to his death contributed sums of money

to him without which he could barely have existed, as he was unable to obtain the necessities of life; that his only means of living was from a small truck farm owned by his second wife; that his physical condition for more than twenty years was such as to incapacitate him from doing any hard labor. He denied generally the allegations of defendant's answer except such facts as he had alleged in his petition.

By supplemental answer the insurance company denied generally the allegations of the defendant Myrtle Kirtman.

All demurrers and special exceptions of both defendants were by the court overruled.

After instructing the jury as follows:

"A common-law marriage exists when a man and a woman enter into an agreement to become husband and wife, and in pursuance to such an agreement, do live together and co-habit as husband and wife, and hold each other out to the public as husband and wife. Such agreement to become husband and wife may be express or implied; and an 'express agreement' is where the conduct of the parties with reference to the subject matter is such as to induce the belief in the minds of the contracting parties that they intend to do that which their acts indicate they have done.

"There can be no lawful agreement, either express or implied, to enter into a common-law marriage so long as either party to said contract has a living and lawful spouse, so in answering the question hereinafter submitted to you concerning the existence, or nonexistence, of an agreement between Oliver Thomas, and Myrtle Kirtman, or Myrtle Kirtman Thomas, for a common-law marriage, you must find the existence of such an agreement, if you do so find from their acts and conduct after the divorce of Roy Smith and Myrtle Kirtman, or Myrtle Kirtman Thomas" —the case was submitted to a jury on special issues, in answer to which the jury answered to questions pertinent to the issue presented on appeal, as follows:

First, that no common-law marriage existed between Myrtle Kirtman and deceased, Oliver Thomas, after Myrtle was divorced from her husband, Roy Smith; second, that a failure of the insurance company to make a lump-sum settlement with Saul Thomas of compensation due him, if any, on account of the death of Oliver Thomas, would work manifest hardship and injustice to Saul Thomas; third, that Saul Thomas was lawfully married to Georgiana Matthews and he is the father of Oliver Thomas, deceased; and, fourth, that the average weekly wage of Oliver Thomas was $24.

At the request of defendant Myrtle Kirtman, the court submitted the following special issues:

"Did or did not the deceased and Myrtle Kirtman, after the divorce of Roy Smith and Myrtle Kirtman, during the month of October, 1928, enter into an agreement to take each other for husband and wife?" To which inquiry the jury answered, "No."

"What year was Saul Thomas and Georgiana Mathews married?" To which the jury answered, "1901."

"What year was Oliver Thomas born?" To which the jury answered, "1903."

Upon the answers of the jury to the questions submitted and upon the evidence, the court rendered judgment in favor of Saul Thomas against the American Mutual Liability Insurance Company for the sum of $5,-184, with interest thereon from the date of judgment at the rate of 5 per cent. per annum, decreeing, however, that one-third of such recovery should be paid to plaintiff's attorneys, Charles E. Fernandez, Henry O'Dell, and George P. Prendergast, jointly. It was further adjudged that Myrtle Kirtman and her attorneys, Howell & Howell, and the insurance company take nothing by reason of their cross-action against the plaintiff, Saul Thomas; that defendant Myrtle Kirtman and Howell & Howell take nothing by reason of their cross-action against the insurance company.

From the judgment so rendered the defendants, insurance company and Myrtle Kirtman have appealed.

As appellee Saul Thomas and appellant Myrtle Kirtman are each claiming the compensation which may be due by the insurance company by reason of the death of Oliver Thomas, it is advisable and necessary that we first dispose of the issues between those parties presented by this appeal before discussing and disposing of the contentions presented by appellant insurance company. So concluding, we shall first take up and dispose of the complaints of appellant Myrtle Kirtman.

The undisputed evidence shows that Oliver Thomas, deceased, was the only child of Saul Thomas by his first wife, Georgiana, who died before the death of Oliver.

It is apparent from the entire record that the ultimate and controlling issue between appellee Saul Thomas and appellant Myrtle Kirtman is: Was Myrtle Kirtman the common-law wife of Oliver Thomas at the time of his death? A finding by the jury that she was not, under a proper submission of that issue, would end the controversy between her and all other parties to the suit.

As already stated, the jury found upon sufficient evidence that Myrtle Kirtman was not the common-law wife of Oliver Thomas at the time of his death, in answer to both the inquiries made in the main charge and the special charge, of the same import as that in the main charge, requested by her; thus leaving the only inquiry, as far as Myrtle Kirtman is concerned, as to whether the court erred in submitting the question of such common-law marriage to the jury; in other words, did the court by his charge commit an error calculated to prejudice the rights of appellant Myrtle Kirtman of which she could complain?

Appellant Myrtle Kirtman complains of the definition of "common-law marriage" given to the jury by the charge, which we have hereinbefore set out. The complaint made of such definition is: First, that it furnishes no guide to the jury upon which to base a verdict; second, that it fails to define what is meant by "implied agreement"; and, third, that the definition of "expressed agreement" was incorrect.

■■ We are not prepared to hold that the definition complained of is incorrect, but if it was appellant Myrtle Kirtman is in no position to complain of it, as she submitted to the court, and requested that it be given to the jury, a definition of a "common-law marriage" shown on page 52 of the transcript, which is word for word the same as the definition complained of. If, therefore, there was error in the definition given by the court, it was one in which appellant Myrtle Kirtman participated. One requesting a special instruction to be submitted cannot thereafter complain on the ground that it was erroneously given. "It is a general rule, well established by the decisions of our appellate courts, that when counsel for a party to the suit has requested the court to charge a given proposition of law, and it is given, if the charge requested and given is erroneous such error cannot be taken advantage of by the party whose counsel made the request. This is true even where the requested charge is refused, if the same proposition is embodied in the charge given by the court, because it will be presumed that the charge given by the court was so given in compliance with the request made." I. & G. N. Ry. Co. v. Sein, 89 Tex. 67, 33 S. W. 215, 216, 558; Wichita Cotton Oil Co. v. Hanna, 107 Tex. 30, 173 S. W. 644; Twichell v. Klinke et al. (Tex. Civ. App.) 272 S. W. 283; Poindexter v. Receivers of Kirby Lumber Co., 101 Tex. 322, 107 S. W. 42; Pyron v. Brownfield (Tex. Civ. App.) 269 S. W. 202.

■ Myrtle Kirtman also complains of that portion of the court's instruction which followed the definition of common-law marriage given by the court which reads as follows:

"Keeping the above definition and explanation in mind, you will answer whether or not a common law marriage existed between defendant, Myrtle Kirtman or Myrtle Kirtman Thomas, and the deceased, Oliver Thomas,

after the date of the divorce between the said defendant, Myrtle Kirtman, or Myrtle Kirtman Thomas, and Roy Smith."

Appellant complains of the giving of such instruction, insisting that it is a charge upon the weight of the evidence and furnishes no guide to the jury, as it was a mixed question of law and facts and allowed the jury to speculate and draw their conclusions as to what would constitute a common-law marriage of Myrtle and Oliver Thomas.

There was no error in giving the instruction complained of in the manner given. It followed and referred to the definition given of what constituted a common-law marriage, just preceding it. Therefore it did not leave the jury to speculate and draw their conclusion as to what constituted a common-law marriage, as they had just been instructed in the preceding clause of the instruction how a common-law marriage could be consummated.

■ Appellant argues that the court erred to her prejudice in confining the inquiry as to whether or not a common-law marriage had been consummated between her and Oliver Thomas, to their acts, conduct, and intentions after she was divorced from Roy Smith in October, 1928, a little more than two months prior to the death of Oliver Thomas.

We think this contention should be answered adversely to appellant for two reasons: The evidence shows that Oliver Thomas was born in 1903, and the jury so found. Myrtle Kirtman testified that in 1918 she and Oliver began to live together under an agreement to be man and wife, and that they so held themselves out as husband and wife to the public. It is shown by the evidence stated that at the time Myrtle Kirtman says her relations began with Oliver Thomas, he was not exceeding 15 years of age, and that at the time she married Roy Smith Oliver was only about 18 years of age. Myrtle's testimony that she and Oliver, a mere child, consummated a common-law marriage in the manner mentioned by her has, we think, no probative force. However, if we be mistaken in our conclusion just stated, the giving of the charge complained of would not, in our opinion, constitute reversible error, if error at all, in that counsel for appellant requested the court to submit substantially an issue confining the inquiry of the acts, declarations, etc., of Myrtle and Oliver to those after she was divorced from Smith, which occurred, as we have said, only about two months prior to the death of Oliver.

Myrtle's requested issue No. 1, which was given by the court to the jury, was as follows:

"Did, or did not, the deceased and Myrtle Kirtman, after the divorce of Roy Smith and Myrtle Kirtman, during the month of October, 1928, enter into an agreement to take each other for husband and wife?"

Appellant requested no other submission with reference to the time of the cohabitation between her and Oliver Thomas disclosed by the record. If there was error in the giving of the instruction complained of, appellant participated in the same by the submission of her special requested issue No. 1, and therefore she is in no position to complain of the court's charge. I. & G. N. Ry. Co. v. Sein, 89 Tex. 66, 33 S. W. 215, 558; Wichita Cotton Oil Co. v. Hanna, 107 Tex. 30, 173 S. W. 644; Twichell v. Klinke (Tex. Civ. App.) 272 S. W. 283; Pyron v. Brownfield (Tex. Civ. App.) 269 S. W. 202; Poindexter v. Receivers of Kirby Lumber Co., 101 Tex. 322, 107 S. W. 42.

■ While we have disposed of what we consider practically the only pertinent complaints made by appellant Myrtle Kirtman, there is left a complaint by her of the refusal of the court to sustain her special exception to that part of the plaintiff's petition which alleges, as an excuse why he did not file his claim sooner than he did, that after the death of his son, Myrtle Kirtman falsely and fraudulently represented to him that she was the wife of his son; that to bolster up such false and fraudulent representation she procured and caused to be delivered to plaintiff what purported to be a marriage certificate issued by the county clerk of Galveston county on August 14, 1920, to Oliver Thomas and Myrtle Kirtman, which on its face showed that a marriage had been performed uniting said parties in marriage; that in truth and in fact such certificate had been issued to Roy Smith and Myrtle Kirtman, but the same had been altered by erasing the name of Roy Smith and inserting in lieu thereof the name of Oliver Thomas, in that such allegation was immaterial to any issue in the case and was prejudicial to the rights of her.

We think the court properly refused to sustain appellant's exception. By section 4a of article 8307, it is provided that notice of the injury complained of shall be given to the association (insurance company) or the subscriber within 30 days after the happening of such injury, but it also provides that in case of death of the injured party, in meritorious cases, strict compliance with the notices required and the filing of claim may be waived by the board for good cause shown.

Under the statute the plaintiff had the right to set up his reasons for not sooner personally giving notice of the death of his son and for his failure to sooner file his claim with the board.

Having disposed of the complaints of Myrtle Kirtman adversely to her, we shall now consider the contentions made by the insurance company for a reversal of the judgment, or for a reformation of the same.

It is advisable at the outset to note that nowhere in its brief does appellant insurance company attack the judgment for want of jurisdiction of the court to hear and dispose

of the cause for want of proper notice of the injury or failure to file claim with the Accident Board.

In view of the fact that Myrtle Kirtman was never the wife of Oliver Thomas, she is not concerned as to whether notice of the injury was given as required by section 4a of article 8307. It was agreed by the parties, as shown by the statement of facts, that notice of the fatal injury to Oliver Thomas was given by Myrtle Kirtman to the subscribers and to the insurance company within 30 days from the date of such injury. All the statutes require is that such notice shall be given as a prerequisite to a proceeding for compensation. There is no provision that such notice shall be given by the proper claimant. It was also agreed that Myrtle Kirtman filed a claim for compensation to the Accident Board within six months after the date of the death of Oliver Thomas, and it is shown by the undisputed evidence that the plaintiff, Saul Thomas, filed his claim for compensation with the board, contesting the claim of Myrtle Kirtman, within six months after the date of the injury. Such being the state of the record, and in view of the fact that the insurance company is not making any attack on the jurisdiction of the trial court, nor the sufficiency of the notice mentioned, nor the time of filing of appellee's claim with the board, we will not further notice the attacks made by Myrtle Kirtman upon the sufficiency of such notice and filing, as failure, if any, to give the notice or file the claim mentioned could in no way affect her rights.

Appellant insurance company first insists that the court erred in rendering judgment for the plaintiff for a sum in excess of that prayed for by him, in that appellee alleged that the weekly wage of his deceased son was $23.08 and that he was entitled under the law to 60 per cent. of said weekly wage per week for 360 weeks. He prayed for judgment for such sums, but the court rendered judgment for $14.40 per week for 360 weeks.

Appellant correctly insists that the judgment rendered is based upon the finding of the jury that the average weekly wage of deceased was $24 and that such judgment is not supported by the pleadings, nor in answer to the prayer of the plaintiff.

■ According to the table in use by the Accident Board of Texas, the present value of $1 paid over a period of 360 weeks is $296.-0756. The judgment rendered by the court in this case gave appellee a recovery of $5,184. The sum prayed for by appellee is $4,986, which was all the court could have properly awarded upon appellee's allegations and prayer. Since the court awarded to appellee the sum of $5,184 to be paid in a lump sum without allowing a reduction of 6 per cent. as agreed upon by the parties in case of an award of a lump-sum settlement, and since the award should have been for $4,986 only, which in case of a lump-sum settlement should have been discounted at the rate of 6 per cent., reducing the sum which should have been awarded to $4,101.55, and since the difference between such sum and the $5,184 awarded is $1,083.45, such difference in the two sums should have been deducted from the $5,184 awarded by the judgment, which would leave a balance of $4,101.55 for which only the judgment should have been rendered.

Appellee filed in the trial court a remittitur, asking the court to remit 6 per cent. from the sum of $5,184 awarded by the court, which remittitur the court approved and allowed. Appellee, however, in his brief filed in this court, says that it was his intention to file the proper remittitur, which is now shown to be $1,083.45, thus leaving $4,101.55, which sum ought to have been awarded to him by the judgment, and that he now in this court files his remittitur in the sum of $1,-083.45, and asks that in case the judgment can be affirmed upon the filing of such remittitur that it be so reformed by deducting the same sum of $1,083.45 from the sum of $5,184 awarded to him by the judgment, leaving a judgment in his favor for $4,101.55 and, as reformed, affirmed.

■ We have reached the conclusion that unless the judgment should be reversed upon some other complaint of appellant insurance company, the same should be reformed and affirmed as requested by appellee.

■ By its second proposition the insurance company insists that the court erred in rendering judgment for a lump-sum settlement, in that there was no pleading that this was a case in which manifest hardship and injustice would result if such settlement was not made, and in that no facts were pleaded from which such manifest injustice or hardship could be inferred, and in that there was no prayer for a lump-sum settlement.

We overrule appellant's contention. In plaintiff's supplemental petition it is alleged as follows:

"That the deceased, Oliver Thomas, from time to time, has contributed certain sums of money to plaintiff, and without which plaintiff would barely have existed, on account of his being unable to properly purchase the necessities of life, the only receipts received by plaintiff being from a small truck farm owned by his second wife; that on many occasions, while deceased was not employed, the deceased helped plaintiff in the working of the small farm owned by his second wife, and that the plaintiff's physical condition is such that he has been incapacitated from doing any hard, heavy, or laborious manual labor, for more than twenty years."

He made substantially the same allegations in his original petition.

Plaintiff testified that his health was such that he could not do any hard work; that he had been suffering from inflammatory rheumatism for twenty years.

Daniel Thomas testified that Saul Thomas was suffering from rheumatism and had been so suffering for some time and was unable to perform manual labor; that witness had assisted in maintaining Saul Thomas by giving him groceries and other necessaries of life; that Saul Thomas cannot earn enough to maintain himself and his wife.

Henry Matthews testified that Saul Thomas is a cripple and cannot do hard work.

Sidney Martin testified that Saul Thomas is a cripple.

Gilbert Sutton testified that he had known Saul Thomas for twelve or thirteen years; that Saul is a cripple.

It has been held by the Commission of Appeals and several of our Courts of Civil Appeals that in cases where a lump sum is awarded and the proper discount allowed, and only the present value is to be paid, no hardship is worked on the insurance company by such award. That the only just contention that could be made would be that a proper discount had not been allowed. Consolidated Underwriters v. Saxon, 265 S. W. 143, 146, by the Commission of Appeals; New Amsterdam Casualty Co. v. Parham (Tex. Civ. App.) 2 S. W.(2d) 866; Texas Insurance Association v. Wright (Tex. Civ. App.) 297 S. W. 764, 766; Travelers' Insurance Co. v. Smith (Tex. Civ. App.) 266 S. W. 574, 576; Georgia Casualty Co. v. Little (Tex. Civ. App.) 281 S. W. 1092.

We quote from the cases cited, as follows:

Texas Employers' Insurance Association v. Wright, supra:

"The defendant did not plead the necessity for such lump sum settlement, neither did he ask for it in his motion for judgment. Such issue was not submitted to the jury for their determination. * * * The trial court, independent of the jury, found the necessity for a lump sum award because the failure to make such award would inflict manifest injury upon the defendant. Our courts have uniformly held that the awarding of such lump sum judgments was discretionary with the trial court, and unless this discretion is abused such finding and conclusion cannot be disturbed on appeal. It is true, ordinarily, that, in the absence of pleading authorizing a recovery, the judgment will not stand, but as our courts have also held that the compensating company has suffered no injury, where a proper discount has been made on the weekly payments, such assigned error does not call for a reversal of the case."

In the case of Consolidated Underwriters v. Saxon, supra, the Commission of Appeals, speaking by Judge Hamilton, says:

"At any rate, the lump sum is discounted and only its present value is paid when a lump sum is allowed. Hence no hardship is worked on the insurance company or association by such a settlement. Its only contention justly to be made would be that a proper discount had not been made."

Travelers' Insurance Co. v. Smith, supra:

In any event, where a proper discount reducing future payments to a present value is made by the trial court, the insurance company is not injured, and should only be heard to complain that proper discount has not been made.

In view of the holdings in the cases cited, we overrule the contention of appellant last mentioned.

Special issue No. 2 submitted to the jury was as follows:

"Would a failure of the defendant American Mutual Liability Insurance Company to make a lump sum settlement with plaintiff, Saul Thomas, of the compensation due him, if any, on account of the death of Oliver Thomas, deceased, work manifest hardship and injustice to the plaintiff, Saul Thomas? Answer Yes or No."

By special issue No. 3 the jury was asked whether or not Saul Thomas was lawfully married to Georgiana Matthews, and special issue No. 4 was as follows:

"If you have found from a preponderance of the evidence, and have answered the foregoing interrogatory in the affirmative, then you will answer the following issue: Is, or is not, plaintiff, Saul Thomas, the father of Oliver Thomas, deceased? Answer 'He is' or 'He is not.'"

By its third and fourth propositions, appellant insurance company urges that the court erred in failing and refusing to charge upon the burden of proof in connection with special issues 2 and 4. The objection made to the two charges in the trial court, with reference to burden of proof, is that they do not inform the jury upon whom the burden of proof of the issues rests.

While it is a rule of law that the burden is upon the party asserting the affirmative of an issue, it is often not necessary to give it in a charge to the jury. In many cases, as in this case, the evidence on the issues in question is practically undisputed, and in such circumstances it is unnecessary to give instructions upon the burden of proof. The charges are insufficient if they submit the questions of fact to be found. Blum v. Strong, 71 Tex., 321, 6 S. W. 167; Davis v. Hill (Tex. Civ. App.) 291 S. W. 681; Plains Drilling Co. v. Christy (Tex. Civ. App.) 25 S.W.(2d) 276; Ford v. Couch (Tex. Civ. App.) 16 S.W.(2d) 869, 870; Moore v. Orgain (Tex. Civ. App.) 291 S. W. 583; Stooksbury v. Swan, 85 Tex 566, 22 S. W. 963.

In Ford v. Couch, supra, it is said:

"It is ordinarily not proper for the court to charge the jury that the burden of proof upon an issue is upon the plaintiff, or upon the defendant, in cases submitted upon special issues, for the reason that the jury are not to be informed an answer to a special issue is favorable to plaintiff or defendant."

The rule so announced is also announced in the other cases cited.

We have hereinbefore quoted the evidence of several witnesses which shows that the plaintiff was a cripple and had been such for a long time, and that he was unable to do hard work, and was unable to make a living. Hence it was not necessary to tell the jury that the burden was upon plaintiff to prove that a failure to get his compensation in a lump sum would work a hardship upon him.

The question as to whether the plaintiff was lawfully married to Georgiana Matthews and that he was the father of Oliver Thomas, deceased, is not controverted by any witness, or even by a remote circumstance. It was not necessary under the evidence to submit the inquiry as to the marriage of Saul Thomas to Georgiana Matthews, or as to whether or not Oliver was the son of Saul Thomas.

We overrule the contentions made by appellant's propositions Nos. 3 and 4.

In answer to special issue No. 5, the jury found that the average weekly wage of Oliver Thomas, deceased, was $24. Appellant attacks such finding as being contrary to the great and overwhelming weight of the evidence and as contrary to the only evidence introduced on the issue by appellee, by which he is bound.

Such attack is untenable. It was agreed by counsel for all parties that the witness William McKinley testified that from his knowledge he knew that a man, engaged in the same or similar work to that in which Oliver Thomas was engaged, made 40 cents an hour for regular time, and 60 cents an hour for overtime; and that during the two years that Oliver worked for Suderman & Young prior to his death he was a good steady worker and that he worked the year round; that he was in the employ of Suderman & Young the entire year prior to his death; that he worked steadily, and sometimes he made 50 cents an hour overtime.

Myrtle Kirtman testified that she sometimes got Oliver's weekly pay envelope and it contained some weeks $25 and sometimes $30; that sometimes he made $20 per week, sometimes $25, and sometimes $30.

Appellant complains of the submission of special issue No. 5, insisting that the court erred in submitting such issue without defining the term average weekly wage. We overrule such contention. In special issue No. 6, which went to the jury, the court asked the jury the following question:

"What amount do you find, from a preponderance of the evidence, was the weekly wage of Oliver Thomas, for the year immediately preceding his death on January 1, 1929?"

While the jury were told that they were to answer such question only in the event they had, in answer to issue No. 1, found that Myrtle Kirtman was the common-law wife of Oliver Thomas, such inquiry was followed by the following definition of "average weekly wage":

"In this connection, you are instructed by the term 'average weekly wage is meant $\frac{1}{52}$nd of his average annual wage, and by the term 'average annual wage' is meant 300 times his average daily wage."

While the jury were not required to make answer to issue No. 6, as they answered issue No. 1 that Myrtle Kirtman was not the common-law wife of Oliver Thomas, they must have read the definition of "average weekly wage" given by the court. However, the writer is of the opinion that without such definition any jury of ordinary intelligence, knowing that there are 52 weeks in a year, would know that $\frac{1}{52}$ part of an annual wage would be a weekly wage. The objection made to issue No. 5 is too technical to cause a reversal of the judgment.

If, however, we are in error in the holdings next above stated, appellant's complaint should be overruled, because the court gave to the jury special issue No. 6, requested by appellant Myrtle Kirtman, defining "average weekly wage" as follows:

"What amount do you find, from a preponderance of the evidence, was the average weekly wage of Oliver Thomas for the year immediately preceding his death on January 1, 1929?

"In this connection you are instructed, by the term 'average weekly wage' is meant one-fifty-second of his average annual wage, and by the term 'average annual wage' is meant 300 times his average daily wage."

Hence, it is apparent that the instructions which appellant says should have been given were in fact given to the jury.

We have already, under the disposition of appellant's contentions under its propositions 1 and 2, disposed of the contentions made by its propositions 7 and 8, and therefore we shall not discuss the contentions made by such propositions.

For the reasons above stated, the judgment is reformed by deducting from the sum of $5,184 awarded to appellee, Saul Thomas, by such judgment, the sum of $1,083.45, remitted by appellee in this court, leaving a bal-

240

ance of $4,101.55, for which sum judgment is here rendered for appellee, Saul Thomas, against American Mutual Liability Insurance Company; such judgment is further reformed so as to award to Charles E. Fernandez, Henry O'Dell, and George P. Prendergast, attorneys of Saul Thomas, jointly one-third of the sum here adjudged to Saul Thomas, which is $1,367.15 instead of $1,728.00 awarded to them by the judgment of the trial court, which sum awarded to said attorneys is to be paid by the American Mutual Liability Insurance Company out of the sum here adjudged to appellee, Saul Thomas. The judgment as thus reformed is affirmed.

Reformed and affirmed.

### On Motion for Rehearing.

Appellant Myrtle Kirtman Thomas has filed her motion for rehearing, and in such motion it is said that this court held that appellant's objection to special issue No. 1 given by the court was well taken, but that as appellant had requested a similar issue to the one given by the court, the error of the court in submitting special issue No. 1 became harmless and could not be complained of by appellant.

Appellant in her motion correctly states that the requested issue referred to was not requested by her, but that it was given at the request of Saul Thomas, but she is in error in stating that this court held that appellant's objection to special issue No. 1 given by the trial judge was well taken and that the court erred in submitting it to the jury over appellant's objection.

We did not hold, as stated by appellant, that the submission of special issue No. 1 was error, nor do we now so hold. To the contrary, we are of opinion that the submission of such issue was not error.

With the above statement, we overrule appellant's motion.

Overruled.